UNITED STATES

v.

Jeffery D. MILLER, 558 63 2808
Private First Class (E–2),
U.S. Marine Corps.

NMCM 93 02382.

U.S. Navy–Marine Corps Court of
Criminal Appeals.

Sentence Adjudged 2 April 1993.

Decided 10 Nov. 1994.

Col Eugene A. Ritti, USMCR, Appellate
Defense Counsel.

LCDR Howard B. Goodman, JAGC, USN,
Appellate Defense Counsel.

LT James L. Epperson, JAGC, USNR,
Appellate Government Counsel.

Before REED, ORR and KEATING, JJ.

REED, Senior Judge:

In this case we decide whether a new convening authority's action is required when a detailed defense counsel is released from active duty prior to the service of the staff judge advocate's [SJA] recommendation on him pursuant to Rule for Courts–Martial [R.C.M.] 1106, and a substitute counsel, who is appointed for such service, fails to establish an attorney-client relationship with the appellant. Under the specific facts of this case, we hold that a new convening authority's action is not required.

*HISTORY OF THE CASE*

The appellant was tried by a military judge sitting as a special court-martial on 2 April 1993. Pursuant to his pleas, the appellant was convicted of wrongfully using methamphetamine under Article 112a, Uniform Code of Military Justice [hereinafter "UCMJ" or "the Code"], 10 U.S.C. § 912a. He was sentenced to confinement for 1 month, forfeiture of $530.00 pay per month for 1 month, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, except for the bad conduct discharge, ordered it executed but suspended the confinement in excess of 30 days.

Prior to his release from active duty, Captain R, who represented the appellant at trial, on 17 August 1993 submitted a clemency package to the convening authority requesting that the bad-conduct discharge be disapproved, suspended, or mitigated to an administrative discharge. In support of this clemency request, the detailed counsel provided the convening authority with (1) the appellant's statement from trial and (2) information that (a) the appellant had previously asked for help of the battalion commander and not received it and (b) two staff noncommissioned officers and two noncommissioned officers had thought enough of the appellant to testify in his behalf. Captain R was then released from active duty on 27 August 1993.

By letter dated 24 August 1993, the Senior Defense Counsel of the Legal Service Sup-

port Section appointed Captain S as substitute defense counsel for the appellant. In this appointing letter, Captain S was told to inform the appellant of this representation. An affidavit from the appellant indicates he was never contacted by Captain S.

Pursuant to R.C.M. 1106 and 1107, an SJA's recommendation was prepared and served on the appellant's substitute defense counsel, Captain S, on 20 September. By memorandum endorsement dated 28 September 1993, Captain S indicated he had no comments or corrections to the SJA's recommendation.

In his first assigned error, the appellant, through his assigned appellate defense counsel, initially argued that a new convening authority's action was required because the attorney-client relationship between the appellant and his trial defense counsel was severed without good cause and without the appellant's consent when his counsel was released from active duty.[1] At oral argument, held on 17 August 1994 before this Court, the appellate defense counsel withdrew this assignment of error in light of this Court's opinion in United States v. Dahood, 32 M.J. 852 (N.M.C.M.R.1991),[2] but argued that the appointment of substitute counsel, Captain S, was nevertheless ineffective, citing this Court's opinion in United States v. Hultgren, 40 M.J. 638 (N.M.C.M.R.1994).

As in the case before us, the appellant in Hultgren argued that the substitute defense counsel did not establish an attorney-client relationship with him because he was never contacted by this counsel. 40 M.J. 638, 640. Thus, the appellant concluded, he did not have the assistance of an attorney in examining and replying to the SJA recommendation as required by R.C.M. 1106(f).[3] Citing United States v. Baca, 27 M.J. 110 (C.M.A.1988), United States v. Iverson, 5 M.J. 440 (C.M.A. 1978), and United States v. Palenius, 2 M.J. 86 (C.M.A.1977), we concluded in Hultgren that when substitute defense counsel did not communicate with the appellant the required attorney-client relationship did not exist. Hultgren, 40 M.J. 638, 640. To remedy this error in Hultgren, we set aside the convening authority's action and returned the record for a new convening authority's action. We do not believe it necessary or required, under the circumstances of the case before us, to return the record for a new convening authority's action.

## ANALYSIS

In United States v. Goode, 1 M.J. 3 (C.M.A.1975), the U.S. Court of Military Appeals held that

on and after May 15, 1975, a copy of the written review required by Article 61 or 65(b), UCMJ, 10 U.S.C. § 861 or 865(b), be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment. Proof of such service, together with any such correction, challenge or comment which counsel may make, shall be made a part of the record of proceedings.

Id. at 6. This reply became known as the "Goode response" and was mandated by the Court of Military Appeals because of "recurring complaints regarding post-trial review and the delays encountered in determining

---

1. The appellant has alleged the following assignments of error:

    I. A NEW CONVENING AUTHORITY'S ACTION IS REQUIRED SINCE THE ATTORNEY-CLIENT RELATIONSHIP BETWEEN APPELLANT AND TRIAL DEFENSE COUNSEL WAS SEVERED WITHOUT GOOD CAUSE AND BECAUSE APPELLANT NEVER CONSENTED TO THE SEVERANCE.

    II. AN UNSUSPENDED BAD CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE. (Citations omitted.)

2. In Dahood we held that the "separation of trial defense counsel [by release from active duty]

does constitute good cause to sever an existing attorney-client relationship unless the original trial defense counsel agrees with the accused to continue in the case as his civilian counsel." 32 M.J. at 853 (citations omitted).

3. R.C.M. 1106(f)(1) provides that "[b]efore forwarding the recommendation and the record of trial to the convening authority for action under R.C.M. 1107, the staff judge advocate ... shall cause a copy of the recommendation to be served on counsel for the accused." (Emphasis added.)

the validity of such complaints...." *United States v. Hill*, 3 M.J. 295, 296 (C.M.A.1977).[4]

At the time of *Goode*, the President, in implementing Articles 60, 62, and 64 of the Code dealing with the roles and duties of the convening authority and the SJA,[5] required an extensive review by the SJA of all general courts-martial and all special courts-martial with a sentence that included a bad-conduct discharge. Such a review had to include "a summary of the evidence," an opinion as to the "adequacy and weight of the evidence," a statement regarding "the effect of any error or irregularity respecting the proceedings" and a "specific recommendation as to the action to be taken" by the convening authority. Manual for Courts–Martial, United States, 1969 (Rev.), ¶ 85. It was within the "particular province of the convening authority to weigh evidence, judge the credibility of witnesses, determine controverted questions of fact" and ·to "determine what legal sentence should be approved." *Id.*, ¶ 85c. The convening authority relied on ·the SJA's review in carrying out this responsibility.

Under these requirements as they then existed, when the mandate of *Goode* was not met, the record of trial was returned for the proper service of the SJA's recommendation and a new convening authority's action. For example, in *Hill* the Government could not demonstrate that a copy of the SJA's recommendation had actually been served on defense counsel. The only indication of service were the words "Copy to" which appeared at the end of the review. However, as noted by the Court of Military Appeals, even if there had been service, the defense counsel was not given adequate time to respond since the review was dated only 2 days before the action was taken. In returning the record for a new review and a new action, the Court noted that the purpose of *Goode* could be effected only by complying with its mandate. 3 M.J. 295, 297.

In *Iverson*, the Court of Military Appeals again considered an appellant's contention that he was prejudiced by the failure of the Government to serve a copy of the post-trial review upon his defense counsel. The Court held:

> [W]e do not believe that a failure to permit trial defense counsel to fulfill his or her role under *Goode* ... can be dismissed as nonprejudicial. In *United [States] v. Hill,* ... we declined to test for prejudice when no counsel had had the opportunity to respond to the staff judge advocate's review. Our solution here will be the same which we there employed.

*Id.* at 444.

Guidance from the Court of Military Appeals on how to handle errors that surround

---

4. *Goode* involved an SJA's review which failed to mention the post-trial unauthorized absence of an accused which was used by the SJA in oral conversations with the convening authority as a basis for the convening authority approving the sentence adjudged at court-martial instead of reducing and suspending it in accordance with a pretrial agreement. 1 M.J. 3, 4–5. In *Goode*, the Court of Military Appeals did not mandate a new convening authority's action but left it to the Army Court of Military Review to cure "the error by adhering to its reassessment eliminating the punitive discharge or ordering further post-trial proceedings, as it deems proper." *Id.* at 6.

5. § 860. Art. 60. Initial action on the record
    After a trial by court-martial the record shall be forwarded to the convening authority, and action thereon may be taken by the person who convened the court, a commissioned officer commanding for the time being, a successor in command, or any officer exercising general court-martial jurisdiction.
    § 861. Art. 61. Same—General court-martial records

The convening authority shall refer the record of each general court-martial to his staff judge advocate or legal officer, who shall submit his written opinion thereon to the convening authority....
    § 862. Art. 62. Reconsideration and Revision
    (a) If a specification before a court-martial has been dismissed on motion and the ruling does not amount to a finding of not guilty, the convening authority may return the record to the court for reconsideration of the ruling and any further appropriate action.
    (b) ...
    § 864. Art. 64. Approval by the convening authority
    °In acting on the findings and sentence of a court-martial the convening authority may approve only such findings of guilty, and the sentence or such part or amounts of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved....
10 U.S.C. §§ 860–62, 864 (1952).

a staff judge advocate's recommendation has been inconsistent. In *United States v. Kincheloe*, 14 M.J. 40 (C.M.A.1982), trial defense counsel did not receive a copy of the recommendation until after the convening authority had taken his action. He failed, however, to alert the SJA, the CA, or appellate authorities to this failure for 2 years. Former Chief Judge Everett, in writing for the Court, stated:

> Instead of promptly complaining that he had received no opportunity to respond to the post-trial review, defense counsel in this case did nothing at all until more than two years later, when he submitted an affidavit at the request of appellate defense counsel. ... Under such circumstances, the lengthy delay waives any objection to defects in service of the post-trial review, so appellant is entitled to no relief....

*Id.* at 43.

It may be that the Court took a different point of view in *Kincheloe* than it did in *Iverson* and *Hill* because of the pending changes to the Code. The Military Justice Act of 1983, Pub.L. 98–209, 97 Stat. 1393, substantially modified the SJA's and the CA's roles and duties regarding the action to be taken on the findings and sentence of a court-martial. The Congress, in passing these changes, noted:

> Under current law, the convening authority makes a legal review of the proceedings, which may involve extremely complicated appellate issues. Advice from the staff judge advocate is required after general courts-martial and after special courts-martial that adjudge punitive discharges. Court decisions have significantly encumbered the staff judge advocate's legal review. As a result, it has become a complex document that consumes substantial judge advocate resources, often is too lengthy to be of use to the convening authority, and *can constitute an independent source of appellate litigation* even when the underlying case is free of error. Moreover, review in the field—which was developed at a time when laymen tried courts-martial without judicial review—is outmoded in view of the *today's sophisticated appellate process*, complete with trained judges, appellate counsel, and civilian review.

H.R.Rep. No. 549, 98th Cong., 1st Sess. 14 (1983), *reprinted in* 1983 U.S.C.C.A.N. 2177, 2180 (emphasis added).

The amendments to the Code implemented by the Military Justice Act of 1983 retain the requirement that the convening authority act on the case but emphasize that this role primarily involves a determination as to whether the sentence should be reduced as a matter of command prerogative (e.g., as a matter of clemency) rather than a formal appellate review. *Id.;* 10 U.S.C. § 860 (1988); R.C.M. 1106. The SJA continues to play an important role in assembling the materials to be used by the convening authority in exercising this prerogative, and the accused has an opportunity to submit sentencing materials and to rebut the SJA's recommendation. H.R. 549.

Article 60(d) of the Code now provides that "[t]he recommendation of the staff judge advocate or legal officer shall include such matters as the President may prescribe by regulation and shall be served on the accused, who may submit any matter in response...." 10 U.S.C. § 860(d) (1988). Thus the role of the SJA review has now been diminished and renamed to become only a recommendation.

In *United States v. Smart*, 21 M.J. 15 (C.M.A.1985), decided after the legislative changes mentioned above, the appellant sought to avoid the waiver rule of *Kincheloe* by noting that the post-trial review was never served on the trial defense counsel and arguing that "the duty of his counsel to respond to the staff judge advocate's review could only be triggered by service of the review on those counsel." *Id.* at 18. Thus, defects could be raised at any time in the review. The Court of Military Appeals disagreed. Former Chief Judge Everett, again writing for the Court, stated:

> Whether the review is not served on the defense counsel until after action by the convening authority, or whether the review is never served and the defense counsel learns of its existence and contents in some indirect way, *the proper procedure is for defense counsel promptly to identify de-*

*fects in the review* and then request that the Court of Military Review remand to the convening authority for further review. *If,* as here, *defense counsel fails to specify defects in the review, then he has waived the accused's right to respond to the post-trial review.*

*Id.* (emphasis added). Noting that waiver again applied, the Court held that the "purpose of service is to provide appellant the opportunity to explain or rebut any adverse matters contained within the post-trial review. However, the service requirement is not an invitation for counsel to do nothing." *Id.*

Shortly after the decision in *Smart,* the Court considered yet another case where the SJA recommendation was not served on trial defense counsel, *United States v. Pena,* 22 M.J. 281 (C.M.A.1986). Judge Cox, writing for the Court, stated: "The Government concedes that the mandate of ... *Goode* ... was not followed in that there is no proof that defense counsel was ever served with a copy of the staff judge advocate's post-trial review. *Because no deficiency in the review has been specified, however, we find no prejudicial error.*" *Id.* at 283 (emphasis added).

More recently, however, several members of the Court appear to be taking a different approach on how to handle errors arising from the *Goode* mandate. In *United States v. Moseley,* 35 M.J. 481 (C.M.A.1992), the trial defense counsel filed a clemency request with the convening authority on appellant's behalf. However, for some unknown reason the SJA's recommendation was not served on defense counsel, and he did not have an opportunity to respond as required by R.C.M. 1106(f) and *Goode.* In the lead opinion, Judge Wiss stated:

[D]efense counsel was not served at all. He was ignored. It was as though appellant was *deprived* of defense counsel at that important stage. Where there effectively was an *absence* of counsel functioning on behalf of an accused, our consideration of harmlessness *is limited to whether subsequently afforded counsel was able to make up for the earlier deprivation.*

35 M.J. at 484 (emphasis by underlining added) (footnote omitted). Judge Wiss went on to say that "the only way to make up for the *absence* of counsel at that stage is to re-do that stage with benefit of counsel acting in appellant's interests." 35 M.J. at 485.[6] Although not cited in our decision, this was essentially the rationale this Court applied in setting aside the convening authority's action in *Hultgren.*[7]

Both Judge Crawford and Judge Gierke dissented from this aspect of Judge Wiss' opinion in *Moseley.* Judge Crawford believed the Court "should not automatically set aside an opinion below unless an error materially prejudices the substantial rights of the accused." 35 M.J. at 485 (Crawford, J., concurring in part and dissenting in part). Judge Gierke stated:

If appellant had made a colorable claim of prejudicial errors or omissions in his post-trial recommendation, or if appellant or her counsel had made a colorable claim that they would have submitted additional matters if the post-trial recommendation had been properly served, ... [he] would agree with the majority.

*Id.* at 486–87 (Gierke, J., concurring in part and dissenting in part).

---

**6.** Judge Wiss attempts to draw a distinction between (a) failing to serve the defense counsel with a copy of the SJA's recommendation, as happened in *Moseley,* and (b) serving a copy but not giving counsel the appropriate time to file any response or otherwise taking the action precipitously. 35 M.J. at 484. This distinction, however, is not consistent with *Smart* and *Pena.* Both of these earlier decisions involved situations where the defense counsel was never served. "In the present case, *no post-trial review was ever served on the defense counsel....*" *Smart,* 21 M.J. at 17 (emphasis added); *see also Pena,* 22 M.J. at 283 (quoted above).

**7.** Even though the substitute defense counsel received a copy of the SJA's recommendation and submitted clemency material in Hultgren's behalf, we did not require Hultgren to indicate what else he might have had his defense counsel do but summarily stated: "The lack of an attorney-client relationship between substitute defense counsel and the appellant compels us to set aside the convening authority's action." *Hultgren,* 40 M.J. at 640.

Since only Chief Judge Sullivan joined Judge Wiss without filing a separate concurrence, the Wiss–Sullivan plurality became a majority only with the concurring opinion of Judge Cox, who ostensibly wrote "only to make an observation." *Id.* at 485. His observation included the following remarks:

> I would urge counsel and the courts below to reflect upon the procedural aspects of raising *this type of error* on appeal to this Court. How should it be done, and why should it be done? ...
>
> Please permit me to suggest a different tack. When appellate defense counsel (or government counsel) discovers that there is an administrative error in the post-trial review, then the aggrieved party should make a motion to correct the error. *The party should also specify the relief being sought* and the reason for the relief. *Normally, the party seeking relief must also allege and show that the request is meritorious.* The court confronted with the motion could then rule upon it. The question then presented for the further appeal would be whether the court below erred in its treatment of the motion for appropriate relief, and we could apply a harmless-error analysis to the issue because we would know that the question had been raised and resolved by the court below.

35 M.J. at 485 (Cox, J., concurring) (emphasis added).

The Wiss–Sullivan position in *Moseley* has been subsequently applied and cited as authority on at least one occasion [8] where the Court returned the record for a new SJA's recommendation and a new convening authority's action after setting aside our decision affirming the findings and sentence. *United States v. Cooper*, 38 M.J. 172 (C.M.A. 1993) (summary disposition). We had affirmed the sentence approved by the convening authority, citing *Pena* and *Smart*, because Cooper failed to indicate what his trial defense counsel would have submitted if

counsel had been properly served. *United States v. Cooper*, No. 91–0124 (N.M.C.M.R. 13 Dec. 1991) (unpublished opinion).

None of the four opinions filed in *Moseley* cite either *Pena* or *Smart*. Judge Cox wrote the opinion for the Court in *Pena*, as we have indicated, and he filed a concurring opinion, limited to addressing a different issue, in *Smart*. Although the Court of Appeals for the Armed Forces may certainly overturn *Smart* and *Pena sub silentio*, as the summary disposition in *Cooper* might indicate, the observation expressed by Judge Cox in his concurring opinion in *Moseley* appears entirely consistent with the rationales expressed in *Smart* and *Pena* even though he voted in *Moseley* to remand the record for a new SJA's recommendation and a new action.

While we might conclude that the appellant in the case now before us was deprived of his detailed counsel by that attorney's release from active duty prior to the service of the SJA's recommendation and the failure of the substitute defense counsel to contact the appellant, it appears to us that the deprivation would be harmless if the appellant had nothing significant to submit to the convening authority. As Judge Cox expressed it, "often the error is so *de minimis* that it is unnecessary to remand the case to correct the error." *Moseley*, 35 M.J. at 485 (Cox, J., concurring). Consequently, we sought additional information from the appellant in light of Judge Cox's suggestion and the plurality language of Judge Wiss "whether subsequently afforded counsel was able to make up for the earlier deprivation." *Id.* at 484.

On 17 August 1994 we ordered the appellant, through his appellate counsel, "to file with the Court any matters under Rule for Courts–Martial 1106(f)(4) that the appellant or his appellate defense counsel would have submitted to the convening authority in response to the staff judge advocate's recommendation of 20 September 1993." [9] In re-

---

**8.** *Moseley* is also cited in *United States v. Leaver*, 36 M.J. 133 (C.M.A.1992), but the issue there involved the need for substitute defense counsel during post-trial review after the accused had challenged the adequacy of his appointed counsel's trial representation.

**9.** Affidavits filed with this Court indicate that both appellate defense counsel have been in close contact with the appellant over the issues that have been raised on appeal, and that an attorney-client relationship clearly has been established with them. Because of their intimate familiarity with the facts of this case, these attorneys, we

sponse to that order, the appellate counsel noted that the SJA's recommendation inaccurately summarized the appellant's proficiency and conduct marks, which he maintains should have been 4.36/4.06 vice the 4.1/2.3 reported by the SJA.[10] Also in response to this Court's order, the appellant filed six clemency letters, all obtained subsequent to this Court's 17 August 1994 order[11] from family and friends.

We are now faced with evaluating the potential impact such disclosures would have had on the convening authority. Considering the facts of this case, we find they would have had no effect.[12]

The appellant entered on active duty in the Marine Corps with a drug waiver. Subsequently, he received nonjudicial punishment under Article 15 of the Code, 10 U.S.C. § 815, for wrongful use of amphetamines/methamphetamine. At his court-martial, he was tried and convicted for using methamphetamine. During his sworn statement at trial in extenuation and mitigation, the appellant admitted he had been using drugs frequently on active duty prior to his nonjudicial punishment. Record at 58–59. He said he had tried to quit such use, but the people he associated with in Long Beach, California, used drugs, and such use was not considered unusual. Record at 58. Upon questioning by trial counsel, the appellant admitted that he could not guarantee to the judge that he would not use drugs again because of the people with whom he associated. Record at 64. Additionally, extensive clemency matters were submitted by detailed defense counsel to the convening authority prior to this counsel's release from active duty.

Viewing the appellant's history of drug abuse and contrasting it with the reply to the SJA's recommendation that would be made were we to send this case back, we find that to return the record for a new convening authority's action would elevate form over substance and be a useless act. We are convinced beyond any reasonable doubt that the matters now raised by the appellant would have had no affect on the convening authority.[13] *See United States v. DeGrocco,*

believe, are well-suited to act as "the subsequently afforded counsel" envisioned in the plurality decision in *Moseley.*

10. As the Government notes in its reply, the SJA's summarization of the appellant's proficiency and conduct marks may be accurate. Appellate counsel is looking only at the proficiency and conduct marks received into evidence at trial. The appellant would probably have received additional, and most probably poor marks, at least for conduct, as a result of his court-martial conviction. For purposes of this opinion, however, we will assume that the SJA incorrectly summarized the appellant's proficiency and conduct marks.

11. We note that the appellant can submit clemency matters at any time after trial, even after the convening authority has taken his action on the sentence. Article 74(a), UCMJ, 10 U.S.C. § 874(a). Under Article 74(a), as implemented in the naval service, "all officers exercising general court-martial jurisdiction over the command to which the accused is attached are designated as empowered to remit or suspend any part or amount of the unexecuted portion of any sentence, including all uncollected forfeitures, other than a sentence approved by the President." Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7C of 3 October 1990, § 0158. Thus, even now the appellant could submit clemency matters to the officer exercising general court-martial jurisdiction over the command to which he is attached, even without any further action on the part of this Court. If we were to send the record back, it would go to the same officer.

12. We note that trial defense counsel, Captain R, and substitute defense counsel, Captain S, have both been released from active duty. Were we to return this record of trial for a new recommendation and a new convening authority's action, yet a fifth defense attorney would be involved in the processing of this case, if we count the appellant's two appellate counsel. The appellate defense counsel clearly have established an attorney-client relationship with the appellant. As a result of the latest appellate defense counsel's discussions with the appellant, appellate defense counsel provided the response to the SJA's recommendation ordered by this Court. Because the appellant is now on appellate leave, see his affidavit of 10 February 1994, a new SJA and a new convening authority would be involved were we to return the case. Accused on appellate leave are assigned to different units than those to which they are attached for court-martial purposes.

13. We note that the clemency letters, submitted to us by the appellant pursuant to our 17 August 1994 order, were obtained only after that order was issued. The appellant did not have them in-hand awaiting contact from his trial defense counsel before submitting them to the convening authority.

23 M.J. 146 (C.M.A.1987) (per curiam). We conclude that the failure to serve the SJA's recommendation on an attorney who actually had an attorney-client relationship with the appellant to be harmless under the circumstances of this case. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

As to the appellant's second assignment of error, we specifically find an unsuspended bad-conduct discharge to be an appropriate part of the sentence under the facts of this case.

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge ORR and Judge KEATING concur.

Nevertheless, we have carefully considered those letters and the matters contained therein and we are convinced beyond any reasonable doubt that they would have had no affect on the convening authority in his action on this case, even when considering them in conjunction with the erroneous proficiency and conduct marks.