# UNITED STATES

v.

**Kenneth J. TYSON, 175 56 8585, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 95 00008.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 8 April 1993.

Decided 20 March 1996.

Capt J.F. HAVRANEK, USMC, Appellate Defense Counsel.

LT KEVIN L. FLYNN, JAGC, USNR, Appellate Government Counsel.

Before DeCICCO, Senior Judge, DOMBROSKI, C.J., and CLARK, J.

DeCICCO, Senior Judge:

In this case, we hold that where it is necessary to appoint a substitute defense counsel after trial to represent a convicted service member for the purpose of reviewing the recommendation of the staff judge advocate, and where the service member does not keep counsel advised of his or her whereabouts while on appellate leave, the service member will not be entitled to relief because the substitute counsel was unable to make contact with him and form an attorney-client relationship, as mentioned in Rule for Courts–Martial [R.C.M.] 1106(f)(2), before examining the recommendation. We also hold, however, that when a substitute defense counsel has taken all reasonable measures to contact the client, but is not successful in doing so, that counsel is not free to withdraw unilaterally from representation, but he or she must continue to exercise reasonable diligence in representing the client's interests, particularly while the case is pending before the convening authority.

### Facts

Contrary to his pleas, a special court-martial composed of a military judge alone convicted the appellant of making and uttering 16 bad checks and of dishonorably failing to maintain sufficient funds for another check in violation of Articles 123a and 134, Uniform Code of Military Justice [U.C.M.J.], 10 U.S.C. §§ 923a, 934. He was sentenced on 8 April 1993 to 150 days confinement, forfeiture of $300.00 pay per month for 5 months, reduction to pay grade E–1 and a bad-conduct discharge. At the end of trial, the appellant indicated that he desired his copies of the record of trial and the staff judge advocate's recommendation to be served on his defense counsel, Captain Siegel. Record at 245.

On the same day, the appellant executed an "Appellate Rights Statement" which included the following provision:

I understand that in order for my defense counsel or any successor counsel properly to represent me, I must keep counsel informed of my current mailing address.

In the space following this sentence, the appellant inserted an address to an apartment in Carlsbad, California and a telephone number at which he could be reached. In the final paragraph of the statement, the appellant agreed to forward any change of address or phone number to the Director, Appellate Defense Division, Office of the Judge Advocate General, Washington, DC.

The military judge authenticated the record of trial on 12 October 1993, but Captain Siegel did not receive a copy of the record until 5 May 1994. The staff judge advocate completed his two and a half-page recommendation to the convening authority on 11 July 1994. By this time, which was about 15 months after trial, Captain Siegel had been released from active duty. In light of defense counsel's departure, the senior defense counsel appointed Captain Nagel to act as substitute defense counsel for the appellant. The appointing letter was dated 4 August 1994. A copy of the recommendation was served on Captain Nagel on 8 September, but on 13 September 1994, Captain Nagel sent a letter to the "Review Chief" that stated: "After numerous failed attempts to contact LCpl Tyson USMC, in an effort to ascertain his wishes in the above referenced matter, and to form the necessary Attorney–Client relationship. [sic] I find myself unable to represent him, and return the package without action." There is no indication in the record that Captain Nagel did anything further in the case, and no clemency petition was submitted. No other counsel was appointed to represent the appellant until the case was received for appellate review.

After Captain Nagel returned the package without action, the staff judge advocate signed an addendum to the recommendation stating that his recommendation was served on Captain Nagel on 8 September 1994, and that service of the recommendation on the appellant at his appellate leave address was attempted on 23 September 1994, but without success. The staff judge advocate indicated that the U.S. Postal Service returned the recommendation due to an insufficient address. The convening authority took his action approving the sentence on 3 November 1994.

The appellant has raised two assignments of error before this Court.[1] The first contains an allegation of the denial of post-trial

rights and is based on 4 different theories, including ineffective post-trial assistance of counsel. The remedy he requests is disapproval of the punitive discharge. The second asserts that the bad-conduct discharge is inappropriately severe.

Upon initial review of the record, and in light of the appellant's arguments that he had been denied an opportunity to comment on the staff judge advocate's recommendation and submit clemency matters, and that he had been denied post-trial assistance of counsel, we ordered the appellant to inform the Court what he or his counsel would have submitted to the convening authority in response to the staff judge advocate's recommendation. *See United States v. Miller*, 41 M.J. 647 (N.M.Ct.Crim.App.1994), *petition granted*, 43 M.J. 159 (1995). Appellate defense counsel responded by stating he would have submitted brig reports, letters, and evidence of personal expenses and restitution for the bad checks. He also stated that he would have personally met with the convening authority to discuss clemency. He has also attached by motion matters to be considered in extenuation and mitigation concerning the appellant's upbringing and background in Appalachia, his inexperience and lack of expertise in handling a checkbook, the support he provided his family, as well as legal error due to a lack of speedy review.

Also, appellate defense counsel blamed the lack of representation of the appellant after trial on the lengthy delay in preparing the staff judge advocate's recommendation. He argues that but for the delay, the appellant would have had Captain Siegel, his trial defense counsel, and the attorney who knew the most about the case, to advocate his interests to the convening authority. He also requested that we order the Government to locate the appellant for him. We note that although the appellant is still on active duty, and presumably on appellate leave, because of his failure to keep interested persons ad-

---

1. I. APPELLANT WAS DENIED HIS POST–TRIAL RIGHTS WHEN: (1) THE STAFF JUDGE ADVOCATE'S RECOMMENDATION WAS NEVER SERVED UPON APPELLANT OR HIS COUNSEL; (2) APPELLANT DID NOT HAVE AN OPPORTUNITY TO COMMENT UPON THE RECOMMENDATION OR SUBMIT CLEMENCY MATTERS; (3) APPELLANT WAS DENIED POST–TRIAL ASSISTANCE OF COUNSEL; AND (4) APPELLANT WAS DENIED HIS RIGHT TO A POST–TRIAL SPEEDY REVIEW.

II. A SENTENCE WHICH INCLUDES AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE.

vised of a current address, no one appears to know where he is located.

In reply, the Government objected to the request that it locate the appellant for the appellate defense counsel. The Government added that the reason the appellant did not receive proper post-trial representation was the appellant's own neglect in keeping his counsel informed of a current appellate leave address.

### Discussion

Rule for Courts–Martial 1106(f)(1) requires the staff judge advocate or legal officer to cause a copy of the recommendation to be served on counsel for the accused. A separate copy is to be served on the accused unless it is impracticable or the accused requests on the record at the court-martial or in writing that the accused's copy be delivered instead to the defense counsel. *Id.* If the detailed defense counsel is not available to represent the accused, substitute defense counsel must be appointed. Substitute defense counsel must form an attorney-client relationship with the accused before examining the recommendation and preparing a response. R.C.M. 1106(f)(2).

Although R.C.M. 1106(f) explains when substitute counsel must be appointed, it does not indicate what substitute counsel should do when, even after exercising his or her best efforts, counsel is unable to make contact with the client and form an attorney-client relationship because the client has not kept counsel advised of a current address. In such circumstances, is counsel even permitted to examine the recommendation when the rule states that the attorney-client relationship must be formed *before* examination of the recommendation? If so, can counsel prepare a response without contacting the client? If not, where does that leave the parties? Can the convening authority ever act in such circumstances? In other words, are we left to keep re-appointing various substitute defense counsel who are unable to contact the appellant over and over again? We do not believe the President could have ever intended such a Sisyphean endeavor in promulgating R.C.M. 1106.

In this case, Lance Corporal [LCpl] Tyson acknowledged his responsibility to keep his counsel and the Appellate Defense Division informed of his current address, yet he failed to do so. For this reason, Captain Nagel was not able to contact him. Even now, appellate defense counsel does not know where he is. We do not fault the Government for not serving the appellant with a copy of the recommendation because first, the appellant requested at trial that his copy be served on his defense counsel; and second, his failure to abide by his obligation to inform those who need to know where he is has prevented the Government from sending him one. A copy was mailed to him, but was returned to the sender. However, due to his request that his copy be served on his defense counsel, the staff judge advocate was not required to serve the appellant personally. R.C.M. 1106(f)(1).

■ The Government was required to serve a copy of the recommendation on the appointed substitute defense counsel, Captain Nagel, and it did so. We also find, based on Captain Nagel's letter in the record, that he exercised reasonable diligence in attempting to contact LCpl Tyson. Unfortunately, he was not successful, and he responded by returning the recommendation without action and stating that he was "unable to represent" LCpl Tyson. In effect, on his own initiative and without being properly relieved by competent authority, he decided not to represent the appellant further. This is where the case went off-track.

Having been duly appointed as substitute counsel, Captain Nagel was required to continue his representation of the appellant until relieved by competent authority. He was not free to withdraw unilaterally. *See* Judge Advocate General Instruction 5803.1A of 13 July 1992; Subj: Professional Conduct of Attorneys Practicing Under the Supervision of the Judge Advocate General [JAGINST 5803.1A], para. 16e(2), Comment. While Captain Nagel's language may have been somewhat inartful, he was still LCpl Tyson's counsel during the post-trial action. As such, he was required to take such action on behalf of his client as was reasonable. *United States v. Iverson,* 5 M.J. 440 (C.M.A.1978);

*United States v. Palenius,* 2 M.J. 86 (C.M.A. 1977); *United States v. Cobe,* 41 M.J. 654 (N.M.Ct.Crim.App.1994). Included in this requirement was his fundamental duty to consider and submit, if appropriate, a petition for clemency to the convening authority on LCpl Tyson's behalf. This responsibility is important due to the long-established principle that an accused's best hope for sentence relief after trial rests with the convening authority. *United States v. Stephenson,* 33 M.J. 79 (C.M.A.1991); *United States v. Bono,* 26 M.J. 240, 243 n. 3 (C.M.A.1988); *Cobe.* As we have said before, counsel is not required to submit a clemency petition in every case. *Cobe.* However, we view the situation here as closely related to the one condemned in *United States v. Moseley,* 35 M.J. 481 (C.M.A.1992), because there appears to have been an absence of counsel acting for the appellant after Captain Nagel said he was unable to represent him. If Captain Nagel was not able to represent the appellant, then who was? There was no one representing the appellant at the crucial time when the convening authority was deciding what action to take. This was not a case where substitute counsel submitted a clemency petition after not being able to contact the client, as in *United States v. Richter,* 37 M.J. 615 (A.C.M.R.1993), but one where counsel did not file anything and did not participate in the post-trial process. As has been stated before, when events such as these take place, staff judge advocates are well-advised not to proceed with post-trial actions before the issue of representation is properly and definitely resolved. *United States v. Jackson,* 34 M.J. 783, 788 (A.C.M.R.1992).

The appellant's failure to keep persons advised of his current address did not forfeit his right to post-trial assistance of counsel, but only of his right to participate with his counsel during the post-trial proceedings. We believe the proper course Captain Nagel should have taken after not being able to contact LCpl Tyson would have been to request a copy of the record of trial, examine the staff judge advocate's recommendation, and consider submitting matters on behalf of LCpl Tyson to the convening authority. Appellate defense counsel has replied to our inquiry with ample material that could have been submitted to the convening authority. Captain Nagel could have done the same.

We have no doubt that once appointed as substitute counsel, counsel may properly act for the accused, notwithstanding the fact that the accused has not had the opportunity to express his own desires or choices. *Iverson,* 5 M.J. at 450 (Cook, J., concurring in the result). The inability of the appellant to participate in the post-trial proceedings can be traced to his own fault in this case. He bears the responsibility for substitute counsel's inability to communicate with him. But he has not waived his right to effective assistance of counsel in such circumstances, and it is better for the appellant to be represented by a counsel with whom he did not communicate than to have no counsel at all and have nothing submitted to the convening authority. *Richter,* 37 M.J. at 616. We cannot state with any assurance that the matters asserted by appellate defense counsel would have had no effect on the convening authority in the exercise of his unique and broad clemency powers. *Cobe.*

In conclusion, we find that the inability of substitute defense counsel to contact the appellant did not permit counsel to withdraw from representation without the approval of competent authority. That counsel should have continued to represent the appellant to the best of his ability under the circumstances, which in this case meant consideration of submission of matters to the convening authority. Substitute defense counsel's statement that he was unable to represent the appellant and the lack of the appointment of another defense counsel left the appellant without a counsel who was functioning on his behalf during a crucial stage of the proceedings as contemplated by *Palenius.* We need not examine for possible prejudice to the appellant because "[d]enial of assistance of counsel during this critical phase of the sentencing process 'is legally presumed to result in prejudice.'" *United States v. Leaver,* 36 M.J. 133, 136 (C.M.A.1992)(Gierke, J., concurring); *see also Moseley.*

Accordingly, the action of the convening authority of 3 November 1994 is set aside. The record of trial is returned to the Judge

Advocate General for a new action by the same or a different convening authority in accordance with Article 60(c)-(e), UCMJ, 10 U.S.C. § 860(c)-(e).

Chief Judge DOMBROSKI and Judge CLARK concur.