UNITED STATES, Appellee,

v.

**Jeffery D. MILLER, Private First Class**
**U.S. Marine Corps, Appellant.**

No. 95–0505.

Crim. App. No. 93 2382.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 27, 1996.

Decided Sept. 27, 1996.

For Appellant: *Lieutenant Commander Howard B. Goodman*, JAGC, USN (argued).

For Appellee: *Lieutenant John R. Livingston, Jr.*, JAGC, USN (argued); *Colonel Charles Wm. Dorman*, USMC (on brief); *Colonel J. Composto*, USMC.

*Opinion of the Court*

EVERETT, Senior Judge:

Appellant pleaded guilty at his special court-martial at Camp Pendleton, California, to wrongful use of methamphetamines, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. After convicting appellant on his pleas, the military judge sentenced him to a bad-conduct discharge, confinement and forfeiture of $530.00 pay for one month, and reduction to the lowest enlisted grade. The convening authority approved these results but, pursuant to a pretrial agreement, suspended confinement in excess of 30 days. The Court of Criminal Appeals affirmed (41 MJ 647 (1994)) and subsequently denied (5–4) appellant's request for reconsideration *en banc*.

Thereafter, appellant successfully petitioned this Court for review of the following issue:

WHETHER SUBSTITUTE DEFENSE COUNSEL'S FAILURE TO CONTACT HIS CLIENT (AND THUS ESTABLISH AN ATTORNEY–CLIENT RELATIONSHIP) PRIOR TO COUNSEL'S REVIEW OF, AND RESPONSE TO, THE STAFF JUDGE ADVOCATE'S POST–TRIAL RECOMMENDATION IS AN ERROR THAT SHOULD BE TESTED FOR PREJUDICE.

As is implicit in this framing of the issue, the Court of Criminal Appeals held that it was error for a substitute defense counsel to act in behalf of appellant in accepting ser-

vice of the post-trial recommendation and responding thereto without first having formally entered into an attorney-client relationship with appellant. The court continued, however, to test for prejudice, after ordering appellant " 'to file with the Court any matters under Rule for Courts–Martial 1106(f)(4) that the appellant or his appellate defense counsel would have submitted to the convening authority in response to the staff judge advocate's recommendation....' " 41 MJ at 652.

After the defense had filed its response, the court below "evaluat[ed] the potential impact such disclosures would have had on the convening authority" and found "they would have had no effect." *Id.* at 653 (footnote omitted). Consequently, finding the error harmless, the court affirmed the findings and sentence.

Now, having considered this appeal in tandem with the certified issues on the same subject matter in *United States v. Hickok,* 45 MJ 142, we agree with the court below both that the service was error and that it was appropriate for that court to test the error for prejudice. We have not been asked to review the court's conclusion that appellant suffered no prejudice, so we do not do so.

### The Facts

Appellant was sentenced on April 2, 1993. His trial defense counsel submitted a rather substantial clemency package to the convening authority on August 17, in which he requested that the bad-conduct discharge be disapproved, suspended, or mitigated to an administrative discharge. *See* RCM 1105, Manual for Courts–Martial, United States (1995 ed.). Ten days later, this counsel left active duty.

On August 24—prior to defense counsel's release from the service—the Senior Defense Counsel of the Legal Service Support Section detailed a substitute defense counsel for appellant. In the appointing letter, Senior Defense Counsel expressly instructed the substitute counsel to inform appellant of this occurrence, thereby creating an attorney-client relationship. *See* RCM 1106(f)(2). Appellant swears in his uncontroverted affidavit, however, that substitute counsel never contacted him.

On September 20, the staff judge advocate (SJA) signed his post-trial recommendation and served it on substitute defense counsel. *See* RCM 1106(a) and (f). Substitute counsel indicated on September 28 that he had no comments or corrections to the recommendation. Ultimately, the convening authority took his action under RCM 1107 on October 13, in which he expressly noted that he had considered the recommendation and the defense counsel's clemency package.[*]

### The Law

Today, in *United States v. Hickok,* 45 MJ at 145, we articulated the guiding principle for determining satisfaction of an accused's right to have defense counsel served with and respond to the SJA's post-trial recommendation:

> If a defense counsel is absent for [these] purposes ..., the accused thereby has been deprived of his right to defense counsel at that important stage.

Then, quoting from Judge Gierke's separate opinion in *United States v. Leaver,* 36 MJ 133, 136 (CMA 1992), we wrote:

> Denial of assistance of counsel during this critical phase of the sentencing process "is legally presumed to result in prejudice."

*Hickok,* 45 MJ at 145.

At the same time, we acknowledged that

[*] The lapses of time between the end of trial on April 2 and the convening authority's action on October 13 seem rather lengthy. This 77–page record was authenticated by the military judge on July 16, 2½ months after trial had concluded; and, as just mentioned, the staff judge advocate did not sign his post-trial recommendation until September 20, a passage of more than 2 additional months. It is troubling that such a short transcript of a guilty-plea trial on a single charge and specification of wrongful use of methamphetamines would experience these delays. More troubling, similar seemingly unexplainable delays between the end of trial and the convening authority's action are appearing with increased frequency in the records filed in this Court for review. *See United States v. Banks,* 7 MJ 92 (CMA 1979), *overruling Dunlap v. Convening Authority,* 23 USCMA 135, 48 CMR 751 (1974).

if counsel who has the legal responsibility to protect the accused's post-trial interests is present, it cannot be said that the accused has been deprived of his right to counsel. Instead, any error that occurs in connection with that counsel's performance of his duty of representation or from a procedural error affecting counsel's ability to meet this responsibility appropriately can be tested for prejudice.

*Id.* at 145.

Accordingly, the question before us here is whether counsel who has the legal responsibility to protect the accused's interests is absent or present for purposes of accepting service of the post-trial recommendation and responding to it. It is undisputed that there was no hiatus in the responsibility for appellant's post-trial interests. Even before trial defense counsel left active duty, Senior Defense Counsel had detailed a substitute counsel, anticipating that departure. This appointment, under RCM 1106(f)(2), acted to create a duty in substitute defense counsel— a duty that he performed when he accepted service of the recommendation and responded. Thus, unlike the situation in *Hickok,* appellant was not "unrepresented in law and in fact until his case reached the Court of Criminal Appeals." *Hickok,* 45 MJ at 144.

We recognize, of course, that substitute counsel did not enter formally into an attorney-client relationship and, thus, in a legal and ethical sense, did not become appellant's counsel. *See United States v. Brady,* 8 USCMA 456, 460, 24 CMR 266, 270 (1956) (attorney-client relationship not created by mere designation of a representative for the accused). Consequently, service of the recommendation on substitute counsel did not comply with the requirement of RCM 1106(f)(1) that such service be "on counsel for the accused."

At the same time, we also recognize that the SJA had no way of knowing that substitute counsel had not become "counsel for the accused" and, so, apparently had every reason to believe that he had complied fully with his responsibility under RCM 1106(f)(1). Most important, we recognize that appellant's interests at that stage were addressed by a functioning lawyer who had the legal duty to protect those interests. We cannot and do not disregard these facts when evaluating the appropriate remedy to which appellant is entitled for the error in substitute counsel's not formally entering into an attorney-client relationship before performing as "counsel for the accused."

Accordingly, we hold that counsel who had the legal responsibility to protect appellant's post-trial interests was present and that the error of serving substitute counsel, who was not "counsel for the accused" in the sense of first having entered into an attorney-client relationship, can be tested for prejudice. In reaching this conclusion, we distinguish the line of cases represented by *United States v. Cornelious,* 41 MJ 397 (CMA 1995); *United States v. Carter,* 40 MJ 102 (CMA 1994); and *United States v. Leaver, supra,* in which defense counsel who purported to act as "counsel for the accused" post-trial did so after the client already had affirmatively acted to discharge that lawyer or at least to bring their continued relationship into question for some reason. The performance by substitute counsel here, pursuant to a legal duty to further appellant's interests by virtue of his appointment under RCM 1106(f)(2), is not equivalent to the ultra vires acts of defense counsel in the cited cases for purposes of determining the remedy to which appellant is entitled.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge SULLIVAN concur.

CRAWFORD, Judge (concurring in the result):

Prior to his release from active duty, Capt R submitted a clemency package on behalf of appellant to the convening authority. The Staff Judge Advocate (SJA)'s recommendation was served on substitute counsel, Capt S, who had no comments or corrections. However, Capt S never contacted appellant. The Court of Criminal Appeals ordered ap-

pellant, through appellate defense counsel, to file matters that would have been submitted to the convening authority. In response the defense objected to appellant's proficiency ratings noted in the SJA recommendation and filed six clemency letters from family and friends.

If the rules were as I mentioned in *United States v. Hickok,* 45 MJ 142, 147–48 (1996) (Crawford, J., dissenting), such an order would be unnecessary. In any event, the court below correctly found no prejudice, citing the following:

> The appellant entered on active duty in the Marine Corps with a drug waiver. Subsequently, he received nonjudicial punishment under Article 15 of the Code, 10 USC § 815, for wrongful use of amphetamines/methamphetamine. At his court-martial, he was tried and convicted for using methamphetamine. During his sworn statement at trial in extenuation and mitigation, the appellant admitted he had been using drugs frequently on active duty prior to his nonjudicial punishment. Record at 58–59. He said he had tried to quit such use, but the people he associated with in Long Beach, California, used drugs, and such use was not considered unusual. Record at 58. Upon questioning by trial counsel, the appellant admitted that he could not guarantee to the judge that he would not use drugs again because of the people with whom he associated. Record at 64. Additionally, extensive clemency matters were submitted by detailed defense counsel to the convening authority prior to this counsel's release from active duty.

Viewing the appellant's history of drug abuse and contrasting it with the reply to the SJA's recommendation that would be made were we to send this case back, we find that to return the record for a new convening authority's action would elevate form over substance and be a useless act.

41 MJ 647, 653 (1994).

GIERKE, Judge (dissenting):

I disagree with the majority's holding that appellant "was not 'unrepresented in law and in fact.'" 45 MJ at 151. In my view, appellant had no counsel within the meaning of RCM 1106(f)(2), Manual for Courts–Martial, United States (1995 ed.). Prejudice should be presumed. *See United States v. Leaver,* 36 MJ 133, 136 (CMA 1992) (Gierke, J., concurring). It is immaterial who was at fault.

Designating Captain S as substitute counsel accomplished only half the mission required by RCM 1106(f)(2). The critical second half was omitted: "Substitute counsel *shall* enter into an attorney-client relationship with the accused before examining the recommendation and preparing any response." (Emphasis added.) Appellant was free to accept Captain S, represent himself, request individual counsel by name, or retain civilian counsel. Until appellant and Captain S entered into an attorney-client relationship, Captain S was a mere staff officer, not Miller's defense counsel, and thus he had no authority to represent him.

I cannot join in the majority's holding that Captain S's appointment and his actions purporting to represent appellant without ever contacting appellant were "close enough for government work." Accordingly, I dissent.