**UNITED STATES**

v.

**Jamie L. SILER, Private First Class (E–2), U.S. Marine Corps.**

**NMCCA 200301215.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 20 Dec. 2002.

Decided 10 Dec. 2004.

LT Jennie Goldsmith, JAGC, USNR, Appellate Defense Counsel.

CDR George F. Reilly, JAGC, USN, Appellate Defense Counsel.

CDR John L. Staley, JAGC, USNR, Appellate Defense Counsel.

Capt Glen R. Hines, USMC, Appellate Government Counsel.

LCDR Monte G. Miller, JAGC, USNR, Appellate Government Counsel.

LT C.C. Burris, JAGC, USNR, Appellate Government Counsel.

Before PRICE, Senior Judge, SUSZAN, and HARRIS, Appellate Military Judges.

SUSZAN, Judge:

On 20 December 2002, a military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. The military judge sentenced the appellant to a bad-conduct discharge. On 13 May 2003, the convening authority (CA) approved the sentence as adjudged.

We have carefully considered the record of trial, the appellant's assignment of error that his sentence is inappropriately severe, the Government's response, the appellant's brief to the issues specified by the court, the Government's answer, and the appellant's reply brief. We find merit in the appellant's claim

that RULE FOR COURTS–MARTIAL 1106(f), MANUAL FOR COURTS–MARTIAL, UNITED STATES (2002 ed.), was not followed. Accordingly, we must remand the record for corrective action.

## Facts

On the same day the appellant was sentenced, he was advised by his trial defense counsel, Captain (Capt) H, USMC, of counsel's responsibility to represent the appellant during the CA's action stage of his court-martial. Appellate and Post–Trial Rights Statement of 20 Dec 2002. On 21 February 2003, Capt A, USMC, as substitute trial defense counsel, signed a receipt for a copy of the appellant's record of trial. On 28 February 2003, Capt D, USMC, as substitute trial defense counsel, signed another receipt for a copy of the appellant's record of trial. Capt D noted that he did have matters to submit pursuant to R.C.M. 1105 and 1106. The staff judge advocate's recommendation (SJAR) was signed on 22 April 2003 and noted "[d]ue to the detailed defense counsel's deployment, a substitute defense counsel has been assigned...." SJAR of 22 Apr 2003. On 24 April 2003, Capt D accepted service of the SJAR as substitute trial defense counsel and indicated that he had *not* established an attorney-client relationship with the appellant, and that he would submit comments or corrections within the next 10 days. A stamp on the receipt indicates, "AS OF 5 May 2003, NO MATTERS PURSUANT TO R.C.M. 1105, MCM, 2002 HAVE BEEN RECEIVED." Receipt for SJAR of 24 Apr 2003. On 13 May 2003, the CA took action.

The case was submitted for review with one assignment of error alleging that the sentence was inappropriately severe. The court specified the following issues:

I. Whether RULE FOR COURTS–MARTIAL 1106(f)(1), MANUAL FOR COURTS–MARTIAL, UNITED STATES (2002 ed.), was satisfied where the staff judge advocate forwarded the SJAR to the convening authority despite knowing that:

a) substitute defense counsel had not established an attorney-client relationship as of the time of service of the SJAR; b) despite indicating an intent to submit comments or corrections to the SJAR within 10 days of the date of service, substitute defense counsel did not submit comments or corrections to the SJAR; and, c) the record does not reflect that substitute defense counsel ever informed the staff judge advocate as to whether he had established an attorney-client relationship with the appellant? *United States v. Miller,* 45 M.J. 149 (C.A.A.F.1996).

II. Whether the appellant was legally and factually without post-trial representation where the substitute defense counsel had not established an attorney-client relationship with the appellant prior to receipt of the SJAR, did not submit comments or corrections to the SJAR, and did not inform the staff judge advocate as to whether he ever established an attorney-client relationship with the appellant? *United States v. Hickok,* 45 M.J. 142 (C.A.A.F. 1996).

In conjunction with the specified issues, the appellant moved to attach a declaration, which indicates he had no contact with trial defense counsel or any substitute trial defense counsel after his court-martial on 20 December 2002. The court granted the motion. In the declaration, the appellant states that he did not understand the process of submitting post-trial matters. The appellant further states that if given the opportunity to do so, he would have submitted matters to the CA to include letters from his employer, co-workers, neighbors, members of his church, and his parents. The Government did not rebut the information contained in the appellant's declaration.

## Discussion

The issues presented are raised on the court's own initiative, under our authority and responsibility pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c). We will affirm only such findings and sentence that we find to be correct in law and fact and that we determine, on the basis of the entire record, should be approved. Art. 66(c), UCMJ. In this regard, we note that the Government has not argued that waiver applies in the appellant's case.

Before a record of trial by special court-martial that includes a sentence to a bad-

conduct discharge can be acted on, the CA's staff judge advocate (SJA) must cause a copy of his recommendation to be served on counsel for the accused and afford the accused an opportunity to respond. *United States v. Goode,* 1 M.J. 3 (C.M.A.1975); R.C.M. 1106(f)(1). If detailed defense counsel is not reasonably available to represent the accused, substitute military counsel shall be detailed and shall enter into an attorney-client relationship with the accused before examining the recommendation and preparing any response. R.C.M. 1106(f)(2).

On 24 April 2003, the SJA caused a copy of his recommendation to be served on the purported substitute trial defense counsel, Capt D. On the same day, Capt D acknowledged receipt and also placed the CA, through his SJA, on notice that he had not established an attorney-client relationship with the accused, as required by R.C.M. 1106(f)(2). Capt D did this by circling the word "not" on the form provided by the SJA, clearly indicating he did *not* have an attorney-client relationship with the appellant. Capt D also checked the block indicating he would submit comments or corrections within the next 10 days. Receipt for SJAR of 24 Apr 2003. There is nothing in the record to show the SJA made any further inquiry on the matter and a stamp on the form indicates "AS OF 5 May 2003, NO MATTERS PURSUANT TO R.C.M. 1105, MCM, 2002 HAVE BEEN RECEIVED." *Id.* Post-trial processing of the case proceeded without comment by the appellant or Capt D and the CA took action on 13 May 2003.

■ Our superior court faced a similar issue in *United States v. Cornelious,* 41 M.J. 397 (C.A.A.F.1995). Although *Cornelious* involved a conflict of interest issue, it also served to highlight that once the Government is on notice of a potential problem concerning an accused's post-trial representation by counsel, the Government has a responsibility to ensure adequate representation. There, as in the appellant's case, the issue involved adequate representation by trial defense counsel for purposes of submission of post-trial matters. The facts in *Cornelious* involved an allegation of ineffective assistance of counsel and a possible conflict of interest

in defense counsel's post-trial representation of the appellant. The court's focus, in granting relief, was whether the CA fulfilled his duty to ensure that counsel properly represented the appellant concerning submission of post-trial matters. The CA's responsibility was placed in issue once his SJA had been put on notice of the possible conflict of interest. In *Cornelious,* the CA was held to this legal obligation even where the court presumed defense counsel knew or should have known of his client's statements of dissatisfaction and was in a position to address the matter. *Id.* at 398.

■ In the case before us, the CA incurred a similar legal obligation, *because he chose to inquire into the establishment of the attorney-client relationship* between the substitute trial defense counsel and the appellant. In response to the Government's inquiry into whether the substitute trial defense counsel had established an attorney client relationship with the appellant, the substitute trial defense counsel told the SJA, in no uncertain terms, that he had not, in a legal or ethical sense, become the appellant's counsel, and had not satisfied his obligation to establish an attorney-client relationship with the appellant, as required by R.C.M. 1106(f)(2) in the time between receipt of a copy of the record of trial (28 February 2002) and receipt of the SJAR (24 April 2002). Once put on notice of this, the SJA should have known that service of the SJAR was not in compliance with R.C.M. 1106(f)(1) because it was not served on the "counsel for the accused," and, at a minimum, the SJA should have determined whether substitute trial defense counsel had taken adequate efforts to contact the appellant. Failure to ensure compliance with R.C.M. 1106(f)(1) and (2), *on the facts of this case,* constituted error.

■ We now consider a remedy for this error. The Government cites to *Miller,* 45 M.J. at 150, as establishing that the error must be tested for prejudice under Article 59(a), UCMJ, 10 U.S.C. § 859(a). In *Miller,* the SJA had been informed that substitute trial defense counsel had been detailed. However, the SJA was never informed that the substitute trial defense counsel had not formed an attorney-client relationship. Our

superior court held that failure of substitute trial defense counsel to enter into an attorney-client relationship with appellant was equivalent, in a legal and ethical sense, to never becoming appellant's counsel. *Id.* at 151 (citing *United States v. Brady*, 24 C.M.R. 266, 270, 1957 WL 4758 (C.M.A.1957)). Consequently, when the SJA caused a copy of his recommendation to be served on substitute trial defense counsel, the SJA *unknowingly* failed to comply with the requirement of R.C.M. 1106(f) that such service be "on counsel for the accused." *Id.* Nevertheless, the court recognized that a functioning lawyer with a legal duty to protect an appellant's interests was present and the error of improper service of the SJAR could be tested for prejudice. In reaching this conclusion, our superior court noted "that the SJA had no way of knowing that substitute counsel had not become 'counsel for the accused' and, so, apparently had every reason to believe that he had complied fully with his responsibility under R.C.M. 1106(f)(1)." *Id.* The *Miller* court ultimately concluded there was no prejudicial error.

In the appellant's case, the SJA knew or should have known that service of the SJAR was not in compliance with R.C.M. 1106(f). Given this important distinction, we are not persuaded that *Miller* is controlling in the appellant's case. In *Miller*, our superior court recognized that the SJA could rely on a presumption of regularity and assume that substitute trial defense counsel would fulfill his responsibility under R.C.M. 1106(f)(2) and establish an attorney-client relationship with the appellant before examining the recommendation and preparing any response. The appellant's case is distinguishable from *Miller*. Here, after inquiring as to whether or not an attorney-client relationship had been established, the SJA was clearly put on notice that service of the SJAR was not in compliance with R.C.M. 1106(f)(1). Substitute trial defense counsel stated on the receipt of the SJAR that no attorney-client relationship had been established and the record, as supplemented by the appellant's unrebutted declaration, is clear that the required relationship was never established. Based on the information provided by the substitute trial defense counsel in response

to the SJA's initial inquiry, the SJA now had the self-imposed duty to inquire further into the matter and determine whether or not substitute trial defense counsel had fulfilled his professional obligation under R.C.M. 1106(f)(2) in representing the appellant prior to allowing the SJAR to be forwarded to the CA for action without comment by the appellant.

The appellant argues that he was legally and factually without post-trial representation due to the trial defense counsel's absence, the failure of substitute trial defense counsel to form an attorney-client relationship or provide any meaningful representation, and the CA's failure to ensure that an attorney who had established an attorney-client relationship with the appellant was actually served with the SJAR. Appellant's Brief of 3 May 2004 at 10–13. Citing *United States v. Hickok*, 45 M.J. 142 (C.A.A.F.1996), the appellant argues that his case should be remanded for a new action, implying a *presumption* of prejudice should apply. We will not presume prejudice.

Service of the SJAR under circumstances where the SJA both seeks and receives notice that counsel has not legally or ethically become counsel for an accused can be viewed as tantamount to no service at all where there is no evidence that the substitute defense counsel established an attorney-client relationship with that accused. Our superior court has previously dealt with the issue of failing to serve a copy of the SJAR on trial defense counsel. *United States v. Lowe*, 58 M.J. 261 (C.A.A.F.2003). In *Lowe* the trial defense counsel was not served a copy of the SJAR before the CA had taken action on the case. While this constituted error, the *Lowe* court did not find plain error, holding rather that the outcome of the case hinged on whether the appellant could make a colorable showing of possible prejudice as a result of the error of improper service. Citing *United States v. Chatman*, 46 M.J. 321 (C.A.A.F. 1997) and *United States v. Howard*, 47 M.J. 104 (C.A.A.F.1997), the *Lowe* court made clear that this threshold is low and if the appellant makes *some colorable showing* of possible prejudice he will be given the benefit of the doubt without speculating on what the

CA might have done if comment had been submitted. *Lowe* 58 M.J. at 263. Based on the facts and the circumstances of this case, the appellant's unrebutted declaration that he would have submitted post-trial matters to the CA to include letters from his employer, co-workers, neighbors, members of his church, and his parents meets this low threshold of possible prejudice. In light of the foregoing, the appellant is entitled to have a new post-trial action.

By our holding today, *we do not purport to impose any new requirement or duty on the CA or the SJA* under R.C.M. 1106(f)(1). However, if they choose to delve into matters under the providence of the detailing authority of the substitute trial defense counsel and that counsel, under R.C.M. 1106(f)(2), they may not ignore the results of the inquiry if the results serve to put them on notice that the requirements of the rule have not been satisfied and that the deficiency is to the detriment of the accused. The CA and the SJA need not ask the question at all. They may rely on the detailing authority of the substitute trial defense counsel and that counsel to fulfill their responsibilities under R.C.M. 1106(f)(2) and that *there is no requirement or duty to delve into the establishment of the attorney-client relationship* between substitute trial defense counsel and the accused. *See United States v. Miller,* 45 M.J. 149, 150 (C.A.A.F.1996).

### Conclusion

Because of our action on the issue of post-trial error, it is premature to address the remaining assignment of error. Accordingly, the CA's action is set aside and the record of trial is returned to the Judge Advocate General for remand to an appropriate convening authority for a new SJAR and CA's action in compliance with R.C.M. 1106 and 1107.

Senior Judge PRICE and Judge HARRIS concur.