**UNITED STATES, Appellee,**

v.

**Bobby R. JOHNSON, Specialist Four U. S. Army, Appellant.**

No. 52,599.
CM 445122.

U.S. Court of Military Appeals.

Feb. 24, 1987.

For Appellant: Luther C. West, Esq., Major Marion E. Winter, Captain Pamela O. Barron (on brief); Lieutenant Colonel Arthur L. Hunt, Captain Bernard P. Ingold, Captain Stephanie C. Spahn.

For Appellee: Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Joseph A. Rehyansky, Captain Howard G. Cooley, Captain Patrick A. Hewitt (on brief).

### Opinion of the Court

PER CURIAM:

Contrary to his pleas, appellant was convicted by a general court-martial with members of assaulting his Korean girlfriend and murdering her several hours later. His sentence to a dishonorable discharge, confinement for 25 years, total forfeitures, and reduction to the lowest pay grade was approved by the convening authority and affirmed by the Court of Military Review.

On the night of July 23, 1982, appellant and Chang Ye Ok were seen arguing outside a Korean nightclub. During the course of the argument, appellant struck her with the back of his hand. After another servicemember intervened, everyone returned to the club. Shortly, however, the fight erupted again and appeared more violent than the first episode. The same servicemember who had intervened minutes before saw appellant swinging his hand at Chang. In her attempt to escape his blows, she fell to the ground. Her hair was in her face and she was holding a cloth with blood on it. Appellant then picked her up and took her back to their apartment. They arrived in the early morning hours of July 24, 1982. Approximately three hours later, Chang was found dead in the room. A subsequent autopsy showed that death was caused by manual strangulation. The evidence showed that appellant had been violent with her several times in the past.

Appellant claimed that Chang committed suicide by hanging herself from a nail in the room. In the course of his visit to the crime scene, Agent Gary Edgette of the Criminal Investigation Command (CID) discovered a ¾- to one-inch nail in the wall approximately four feet above the bed as well as a belt or sash "tied in a slipknot." Since the nail could easily be removed with his fingers, Edgette concluded that it could not have supported a person's weight. Also found sitting on a chair in the room was a weapon known in the martial arts as "nunchukus." It consists of two wooden handles connected by a leather thong. Without objection by the defense, the nunchukus were taken into the deliberation room by the court members.

The three issues granted for review question the actions taken by a court member during the deliberation process, the failure of the military judge to grant a mistrial because one court member had inadvertently viewed some photographs of the victim and another member had been seen talking to a witness during a recess; and the denial of an extension of time to file a response to the staff judge advocate's review. 21 M.J. 152.

## I

Almost 2 years after trial, appellate defense counsel filed an affidavit prepared by court member Captain George S. Ackerson. The affidavit alleges that Captain Ackerson had received extensive training in the martial arts. When a question was raised during deliberations as to why the victim did not scream when she was strangled, Captain Ackerson placed the nunchukus around his own neck to show the members how sufficient pressure could have been applied to the larynx to prevent the victim from crying for help. Captain Ackerson's affidavit is clear that the members all agreed that Chang died from strangulation rather than by hanging.

■ We agree with the Court of Military Review that the matters contained in the affidavit were not "extraneous prejudicial information" which would have come within an exception to the general rule prohibiting use of testimony or statements by a court member to inquire into the validity of

the findings or sentence in any case. *See* Mil.R.Evid. 606(b), Manual for Courts-Martial, United States, 1969 (Revised edition). The nunchukus were admitted into evidence as the possible murder weapon, argued by trial counsel as the likely means by which appellant strangled his victim, and taken by the members into the deliberation room without objection by defense counsel. If the alleged demonstration occurred, it was merely an examination and evaluation of evidence already produced and was not "extraneous" within the meaning of this rule. *See* Annot., 31 A.L.R. 4th 566 (1984); *United States v. Hawkins*, 595 F.2d 751 (D.C.Cir.1978), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979) (use of police binoculars by court members to gauge the validity of the Government's contention that the officers were able to discern the details of a pre-arrest drug transaction from their observation post); *United States v. Callahan*, 442 F.Supp. 1213 (D.Minn.1978); *on remand*, 455 F.Supp. 524 (D.Minn.1978); *rev'd on other grounds*, 596 F.2d 759 (8th Cir.1979) (use by a juror of a stocking over her head to test the validity of the witness' claim that she could see the eyes of the kidnapper through the stocking he was wearing over his face).

■ Moreover, even if Captain Ackerson's alleged demonstration in the deliberation room was extraneous because it was based on a special knowledge or skill not possessed by the other members or included as part of the evidence in the case, appellant could not have been prejudiced. The affidavit shows that the members had already rejected appellant's claim that the victim died by hanging herself. The only question in their minds was why she did not scream for help. We conclude, therefore, that since the matters contained in the affidavit were neither extraneous nor prejudicial, no hearing is necessary to inquire into the validity of the findings of guilty. *Cf. United States v. Accordino*, 20 M.J. 102 (C.M.A.1985); *United States v. Witherspoon*, 16 M.J. 252 (C.M.A.1983); *United States v. Bishop*, 11 M.J. 7 (C.M.A.1981).

## II

■ Defense counsel moved unsuccessfully for a mistrial on two occasions. The first motion was made after the military judge was informed by the president of the court that one of the members had inadvertently seen some photographs of the autopsy while he was sitting in the lounge area during a recess. The area had previously been used as an interview room by trial counsel, and the photographs had been left there by mistake. When questioned by the military judge, the member assured him that he had stopped looking at the photographs as soon as he realized that they were relevant to the case. None of the other court members saw the pictures, and the military judge properly instructed them not to discuss the matter.

■ The second motion for a mistrial was made at the presentencing stage of the trial. It arose after Captain Ackerson advised the parties in an out-of-court session that, during a recess prior to argument on sentencing, Agent Edgette had asked him for a ride to a local hotel, but they did not discuss any matters relating to the case.

We hold that the military judge did not abuse his discretion by refusing to grant defense counsel's two motions for mistrial. *Cf. United States v. Jeanbaptiste*, 5 M.J. 374 (C.M.A.1978). The judge's instruction to the members and their assurances to him that they would neither discuss nor consider the photographs eliminated any possibility of prejudice therefrom. The record shows that Captain Ackerson's communication with Agent Edgette was an entirely neutral event having nothing to do with the merits of the case.

## III

■ The staff judge advocate's review was completed on November 8, 1983, and served on the defense counsel the same date. Immediately preceding the review are two Disposition Forms showing that defense counsel requested an extension of

time to file the *Goode* * response "until approximately 20 Nov" and for an additional extension of time until December 1, 1983. A response was not actually forwarded until January 4, 1984. The convening authority took action on the case on November 15, 1983—7 days after defense counsel had been served. There is no indication from the record whether the convening authority received any of counsel's requests for extension of time. Even if we assume, however, that the convening authority received such requests, defense counsel obviously was not ready to file a response to the review until almost 2 months after he had been served. Furthermore, appellant could not have been prejudiced because the contents of the *Goode* response and clemency petition merely summarized the issues raised at trial. It is clear, therefore, that the convening authority would not have changed his action even if he had received defense counsel's comments in a timely fashion. *See United States v. DeGrocco,* 23 M.J. 146 (C.M.A.1987). Accordingly, if there were error, appellant was not prejudiced thereby.

### IV

The decision of the United States Army Court of Military Review is affirmed.

Judge SULLIVAN did not participate.

---

* *United States v. Goode,* 1 M.J. 3 (C.M.A.1975).