UNITED STATES, Appellee,

v.

Maryann MOSELEY, Storekeeper
Seaman Apprentice U.S.
Navy, Appellant.

No. 67,292.
NMCM 91 0068.

U.S. Court of Military Appeals.

Argued June 3, 1992.

Decided Sept. 30, 1992.

For Appellant: *Lieutenant James R. Crisfield, Jr.,* JAGC, USNR (argued); *Lieutenant Commander Richard D. Zeigler,* JAGC, USNR (on brief).

For Appellee: *Major Laura L. Scudder,* USMC (argued); *Colonel T.G. Hess,* USMC (on brief).

### Opinion of the Court

WISS, Judge.

At a special court-martial, appellant was charged with 24 specifications of making and uttering checks with intent to defraud and with knowledge that sufficient funds were not and would not be on deposit, in violation of Article 123a, Uniform Code of Military Justice, 10 USC § 923a. Pursuant to her guilty pleas, though, she was convicted of 24 specifications of the lesser offense of dishonorably failing to place or maintain sufficient funds on deposit to cover the checks she had made and uttered, *see* Art. 134, UCMJ, 10 USC § 934; para. 68, Part IV, Manual for Courts–Martial, United States, 1984. A court with officer members then sentenced her to a bad-conduct discharge and confinement for 2 months. The convening authority approved these results, except that he suspended for 12 months all confinement in

excess of 45 days. The Court of Military Review affirmed without opinion.

On appellant's petition, we granted review of two issues of law.[1] We now conclude that there is no merit in appellant's first claim but that the error implied in her second granted issue requires a new staff judge advocate's recommendation and convening authority's action.

### I

Appellant was stationed at Keflavik, Iceland, and there opened a checking account at the Navy Federal Credit Union. From December 8, 1989, to April 17, 1990, appellant made and uttered 24 checks to various merchants totalling $4,033.51. These checks were not honored by the Credit Union because appellant did not have sufficient deposits to cover them.

As appellant's checks were returned to them, the merchants to whom appellant had written the checks made numerous, largely unsuccessful attempts to collect their debts from appellant personally. For instance, one of those merchants, the Navy Exchange, made ten telephone calls to appellant between January and April. Although appellant redeemed some of the checks, the Exchange finally had to turn to appellant's commander for help in the collection efforts.

Ultimately, at the Navy Exchange's request, a procedure called paycheckage, somewhat akin to wage garnishment, was imposed on appellant so that funds were involuntarily withheld from appellant's paychecks in an amount that eventually retired that debt. An official from the Navy Exchange testified, though, that appellant continued to write bad checks to the Exchange on her credit union account even after paycheckage had been initiated.

1. Review was granted of the following issues:

I

WHETHER EVIDENCE OF CREDITOR DISSATISFACTION MUST BE ESTABLISHED, AS THE MANUAL'S PLAIN ∙ LANGUAGE SEEMS TO REQUIRE, FOR A SERVICEMEMBER TO BE FOUND GUILTY OF AN ARTICLE 134 BAD–CHECK OFFENSE.

II

WHETHER TRIAL DEFENSE COUNSEL MUST BE GIVEN THE OPPORTUNITY TO RESPOND TO THE RECOMMENDATION OF THE STAFF JUDGE ADVOCATE.

It was undisputed at trial that appellant wrote the checks in question on an account that did not feature overdraft protection; that she was grossly indifferent to her account balance, notwithstanding that she understood the checking process and continually received notices that checks were being dishonored; that her account was closed at some point due to these bad checks but that she continued to write checks on that account; and that each time she wrote one of these checks she knew that what she was doing was wrong and disadvantaged the payee.

As appellant framed the issue which we granted, she implies that guilt of the charged offenses requires an affirmative showing that her creditors were dissatisfied with her performance in paying the bad checks, citing the "plain language" of a combined reading of paragraphs 68 and 71, Part IV, Manual, *supra*. Springing from this platform, she argues that, not only was this dissatisfaction not affirmatively shown, but indeed satisfaction was reflected in the testimony of the Navy Exchange official. She is incorrect both in her premise and in her conclusion.

■ One of the elements of the crime here of concern is that the failure to "subsequently ... place or maintain sufficient funds" on deposit to pay the checks must be *dishonorable*. *See* para. 68b(4). Paragraph 68c explains this aspect of the offense as follows:

> The gist of the offense lies in the conduct of the accused after uttering the instrument. Mere negligence in maintaining one's bank balance is insufficient for this offense, for the accused's conduct must reflect bad faith or gross indifference in this regard. As in the offense of dishonorable failure to pay debts (*see* paragraph 71), dishonorable conduct of the accused is necessary, and the other principles discussed in paragraph 71 also apply here.

In pertinent part, the referenced paragraph 71, which concerns dishonorably failing to pay a debt, provides:

> c. *Explanation*. More than negligence in nonpayment is necessary. The failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations.... The offense is not committed if the creditor or creditors involved are satisfied with the conduct of the debtor with respect to payment....

We see nothing in the "plain language" of these provisions that requires an affirmative showing of creditor *dissatisfaction* in order to convict an accused of the offense of concern here. An affirmative showing of arrangements between the creditor and the accused for resolution of the indebtedness which are satisfactory to the creditor will *negate* the characterization of the failure as dishonorable, *see* United States v. Cummins, 9 USCMA 669, 674, 26 CMR 449, 454 (1958); however, in the absence of such a showing, any evidence—including but not limited to evidence of a creditor's dissatisfaction—may be used to show that the accused's conduct reflects "bad faith or gross indifference" and, thus, was dishonorable. *See* United States v. Kirksey, 6 USCMA 556, 561, 20 CMR 272, 277 (1955); United States v. Downard, 6 USCMA 538, 544, 20 CMR 254, 260 (1955).

■ When a merchant makes repeated and mostly unsuccessful phone calls to the accused in an attempt to resolve bad checks; when the accused makes false promise after false promise; when the creditor ultimately resorts to official procedures to have payments involuntarily withheld from the accused's paychecks; and when the accused even then continues to write more bad checks on the same account, that conduct reflects "bad faith or gross indifference" and, thus, dishonorableness.

■ The merchant's ultimate "satisfaction" with the end result of all this does not equate to "satisfaction" with appellant's conduct in reaching that result, which is "[t]he gist of the offense." *See* para. 68c.

Thus, with the law and the record properly viewed, nothing in the proceedings at trial raised any " 'substantial conflict' with" appellant's pleas that would have required resolution by the military judge. *See United States v. Stewart*, 29 MJ 92, 93 (CMA 1989), quoting *United States v. Hebert*, 1 MJ 84, 86 (CMA 1975).

## II

Appellant's court-martial occurred in Iceland at the end of September 1990. The counsel and the military judge all were from another base and were in Iceland only to try appellant and others. Thereafter, they returned to their home base.

At the conclusion of this court-martial, the military judge ascertained from appellant that she wanted the record of trial delivered to her personally, along with a copy of the post-trial recommendation of the staff judge advocate. *See* RCM 1106(f)(1) and (3), Manual, *supra*. Apparently, this was done. Additionally, on November 1, 1990, defense counsel filed a clemency request with the convening authority on appellant's behalf. *See* RCM 1105(b).

For some reason, though, the staff judge advocate's recommendation was not served on defense counsel so that he would have an opportunity to respond, as is unequivocally required by RCM 1106(f)(1) and *United States v. Goode*, 1 MJ 3 (CMA 1975). Instead, the recommendation was given to the convening authority on December 27, 1990, and the convening authority acted the next day. *See* RCM 1107.

In effect, the Government in this Court argues that this error was harmless. The Government points to the service of the recommendation on appellant herself, defense counsel's earlier-filed clemency petition, the fact that appellant had pleaded guilty, and the absence of any argument either in the Court of Military Review or before this Court that there was error in the recommendation.

In both *United States v. Johnson*, 23 MJ 327 (CMA 1987), and *United States v. DeGrocco*, 23 MJ 146 (CMA 1987), which are relied upon by the Government to support its harmless-error approach, defense counsel was served with the post-trial recommendation but was not given appropriate time to file any response. In *Johnson*, counsel timely asked for an extension of time for filing but, instead, the convening authority acted; in *DeGrocco*, the convening authority acted before passage of the 10 days permitted defense counsel to file his response. *See* RCM 1106(f)(5) (Change 3). Thus, in each case, defense counsel's important post-trial-representation role was acknowledged, *see United States v. Palenius*, 2 MJ 86 (CMA 1977); *United States v. Goode, supra*. Each of those accused had the benefit of defense counsel, and it was appropriate for this Court to examine for prejudice any error as to the length of time afforded counsel to act.

■ In distinction, here defense counsel was not served at all. He was ignored. It was as though appellant was *deprived* of defense counsel at that important stage.[2] Where there effectively was an *absence* of counsel functioning on behalf of an accused, our consideration of harmlessness is limited to whether subsequently afforded counsel was able to make up for the earlier deprivation. *See, e.g., United States v. Wattenbarger*, 21 MJ 41, 45–47 (CMA 1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986); *United States v. Palenius, supra*. Any broader approach turns an examination for harmlessness into a speculative venture without perimeter.

■ Here, recognizing the importance that this Court always has placed on the convening authority's exercise of wide dis-

2. Our dissenting colleagues have referred to the clemency petition filed by defense counsel nearly 2 full months prior to the staff judge advocate's recommendation and the convening authority's action. Even if counsel's performing this post-trial function under RCM 1105, Manual for Courts–Martial, United States, 1984, could, in a proper case, be considered in determining whether counsel was functioning for purposes of RCM 1106, it is not appropriate to do so here, given this lengthy hiatus.

cretion, the only way to make up for the *absence* of counsel at that stage is to re-do that stage with benefit of counsel acting in appellant's interests.

## III

The decision of the United States Navy–Marine Corps Court of Military Review and the convening authority's action are set aside. The record is returned to the Judge Advocate General of the Navy for remand to a new convening authority for a new staff judge advocate's recommendation and a convening authority's action in compliance with RCM 1106.

Chief Judge SULLIVAN concurs.

COX, Judge (concurring):

I write only to make an observation. Frequently, we see cases such as this case, where the error alleged involves an administrative error in the post-trial review. It seems to me that these errors are easily correctable at the time of initial review by the Courts of Military Review, either by immediately remanding the case to the convening authority to have him re-do it correctly or by taking affirmative action at the Court of Military Review to correct the error. All this Court is doing by remanding the case is correcting an administrative error. Perhaps the dissent is right and nothing good will happen for appellant as a result of the remand, but one thing is certain: the record will be complete and the rules will be followed.

I would urge counsel and the courts below to reflect upon the procedural aspects of raising this type of error on appeal to this Court. How should it be done, and why should it be done? Presently, the errors are raised before this Court alleging ineffective assistance of counsel or lack of complete review. But, they are being raised on direct review of the record.

Please permit me to suggest a different tack. When appellate defense counsel (or government counsel) discovers that there is an administrative error in the post-trial review, then the aggrieved party should make a motion to correct the error. The party should also specify the relief being sought and the reason for the relief. Normally, the party seeking relief must also allege and show that the request is meritorious. The court confronted with the motion could then rule upon it. The question then presented for further appeal would be whether the court below erred in its treatment of the motion for appropriate relief, and we could apply a harmless-error analysis to the issue because we would know that the question had been raised and resolved by the court below.

In my judgment, these errors in a post-trial recommendation should ordinarily be fixed by the convening authority. It is his or her responsibility to send up a complete and accurate record. However, I recognize that often the error is so *de minimis* that it is unnecessary to remand the case to correct the error. In those cases, the record can be corrected by the Court of Military Review exercising its extraordinary powers found in Article 66, Uniform Code of Military Justice, 10 USC § 866. Regardless of how it is handled below, we will know not only that we have a correct and complete record, but also that appellant has been given fair consideration of his or her case by the convening authority as well as the Court of Military Review.

CRAWFORD, Judge (concurring in part and dissenting in part):

I concur with Part I of the principal opinion and dissent from Part II.

Contrary to precedent, the majority applies an automatic reversal rule where there is a failure to serve the staff judge advocate's (SJA) recommendation on defense counsel as required by RCM 1106(f)(1), Manual for Courts–Martial, United States, 1984. The Court should not automatically set aside an opinion below unless an error materially prejudices the substantial rights of the accused. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a). In *United States v. De-Grocco*, 23 MJ 146 (CMA 1987), this Court

applied the harmless-error test even when the convening authority took action prior to the defense submissions:

> [T]o warrant reversal, an accused must make some showing that he would have submitted material to the convening authority if that officer had not acted prematurely on his case. *See United States v. Skaar*, 20 MJ 836, 840 (NMCMR 1985) (*en banc*). Such a showing should include an offer of proof as to the nature of the material which would have been submitted. *See United States v. Diamond*, 18 MJ 305 (CMA 1984), and *United States v. Babcock*, 14 MJ 34 (CMA 1982). The failure to make any such submission will be treated as a waiver. *Cf. United States v. Goode*, [1 MJ 3 (CMA 1975)]. DeGrocco has made no showing that he would have presented any material to the convening authority beyond the record.

*Id.* at 148 (footnote omitted). *See also United States v. Johnson*, 23 MJ 327 (CMA 1987).

I do not condone the sloppy practice here of failing to serve defense counsel. Consistent with our prior case law, however, I would apply the harmless-error test in this case.

It is difficult to distinguish between serving an SJA's recommendation on counsel who was not given an opportunity to reply as in *DeGrocco* and failing at all to serve an SJA's recommendation on counsel. In both instances one could argue that the effect might be the absence of input to the convening authority from appellant's counsel. Accordingly, it would be in keeping with our prior case law to require appellant to set forth the information which might lead to a different result rather than establishing a *per se* reversal rule.

The issue presented is what action, if any, the convening authority might take if provided with unidentified additional matters on behalf of appellant. The principal opinion seems to indicate that the convening authority might have suspended the discharge based on the unidentified additional matters because appellant had already served most of the confinement. By not requiring counsel to specify additional matters, we are in the unenviable position of guessing whether these matters exist and, if so, whether they might lead the convening authority to grant additional clemency.[*]

Based upon appellant's petition for clemency, the convening authority's action, and appellant's failure to specify additional matters, I would find no prejudice to appellant and affirm the decision below.

GIERKE, Judge (concurring in part and dissenting in part):

I agree with the majority on the first granted issue, but I disagree that a new post-trial recommendation and convening authority's action is required in this case. The service requirement in Article 60(d), Uniform Code of Military Justice, 10 USC § 860(d) (1986), and RCM 1106(f), Manual for Courts–Martial, United States, 1984, was intended to incorporate the procedures mandated by this Court in *United States v. Goode*, 1 MJ 3 (CMA 1975). S.Rep. No. 53, 98th Cong., 1st Sess. 20–21 (1983); Drafters' Analysis, Manual, *supra* at A21–73. The purpose of the service requirement imposed in *Goode* was "to eliminate delays encountered in claims of error in post-trial reviews and the exhaustion of appellate resources when such error could easily and expeditiously be resolved prior to the convening and supervisory authorities' actions." *United States v. Hill*, 3 MJ 295, 296 (CMA 1977).

If appellant had made a colorable claim of prejudicial errors or omissions in this post-trial recommendation, or if appellant or her counsel had made a colorable claim that they would have submitted additional

---

[*] I agree with Judge Cox's view in this case:

> When appellate defense counsel (or government counsel) discovers that there is an administrative error in the post-trial review, then the aggrieved party should make a motion to correct the error. The party should also specify the relief being sought and the reason for the relief. Normally, the party seeking relief must also allege and show that the request is meritorious.
>
> 35 MJ at 485.

matters if the post-trial recommendation had been properly served, I would agree with the majority. When a staff judge advocate fails to comply with RCM 1106(f) and an appellant makes some colorable showing of possible prejudice, we should give that appellant the benefit of the doubt and not speculate about what relief a convening authority might have granted if defense counsel had been given an opportunity to comment on the staff judge advocate's recommendation. *See United States v. Craig*, 28 MJ 321, 325 (CMA 1989). On the other hand, where, as in this case, the post-trial recommendation is error-free and innocuous, and where the defense has submitted everything to the convening authority that they want him to consider, then I do not believe that reversal is required. To do so is to elevate form over substance.

In this case appellant pleaded guilty in accordance with a pretrial agreement. Therefore, her guilt was not in issue. The only issue was clemency. At her trial, appellant specifically requested that the post-trial recommendation be served personally on her. At the time of her trial, RCM 1106(f) required service on the trial defense counsel, but not on the accused. After the trial but before the staff judge advocate submitted his recommendation, appellant and her counsel submitted a complete clemency package. Appellant wrote a handwritten letter to the convening authority and her defense counsel submitted a formal request for clemency, to which appellant's handwritten letter was attached. Both documents were considered by the convening authority. The staff judge advocate's recommendation contained no information adverse to appellant. Although defense counsel now asserts that she would have submitted additional matters if she had been served, she has not identified what, if anything, she would have submitted beyond the clemency matters already considered by the convening authority. *See United States v. DeGrocco*, 23 MJ 146, 148 (CMA 1987) (appellant "must make some showing" of what he would have presented to the convening authority). Under the circumstances, I am convinced that there is no possibility of prejudice. Art. 59(a), UCMJ, 10 USC § 859(a). Although I do not condone the staff judge advocate's disregard of RCM 1106(f) in this case, I do not agree that reversal should be automatic. Accordingly, I dissent from the majority's holding on the second granted issue.