UNITED STATES, Appellant

v.

Fredrick A. HICKOK, Aviation Ordnanceman Airman, U.S. Navy, Appellee.

No. 95–5006.
Crim.App. No. 92 2597.

U.S. Court of Appeals for the Armed Forces.

Argued May 8, 1996.

Decided Sept. 27, 1996.

For the Accused: *Lieutenant E. Rubiella,* JAGC, USNR (argued).

For the United States: *Lieutenant Kevin L. Flynn,* JAGC, USNR (argued); *Colonel Charles W. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Senior Judge:

At his special court-martial at Naval Air Station Oceana, Virginia Beach, Virginia, the accused pleaded guilty to specifications alleg-

ing a conspiracy to commit forgery of a check in the amount of $2,801.25, and larceny of a like amount from the Naval Federal Credit Union, see Arts. 81 and 121, Uniform Code of Military Justice, 10 USC §§ 881 and 921, respectively. After the military judge had convicted him upon his pleas, he sentenced the accused to a bad-conduct discharge, confinement for 4 months, a $3,000.00 fine, and reduction to the lowest enlisted grade. The convening authority approved these results.

On appellate review, citing *United States v. Moseley,* 35 MJ 481 (CMA 1992), the Court of Criminal Appeals set aside the posttrial action of the convening authority and ordered a new action by the same or different convening authority, following service of the same or a newly-prepared staff judge advocate (SJA)'s recommendation upon counsel appointed to represent the accused. Subsequently, testing the correctness of that court's reliance on *Moseley* and, indeed, the viability of *Moseley* itself, the Judge Advocate General of the Navy sent the case to this Court and asked us to answer the following two questions, see Art. 67(a)(2), UCMJ, 10 USC § 867(a)(2)(1989):

## I

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS CORRECTLY INTERPRETED THIS COURT'S DECISION IN *UNITED STATES V. MOSELEY,* 35 MJ 481 (CMA 1992), AS REQUIRING A "PER SE" RULE OF REVERSAL WHERE THE STAFF JUDGE ADVOCATE'S RECOMMENDATION IS NOT SERVED ON TRIAL DEFENSE COUNSEL BUT WHERE CLEMENCY MATTERS WERE SUBMITTED ON BEHALF OF [THE ACCUSED] AND CONSIDERED BY THE CONVENING AUTHORITY?

## II

IF *MOSELEY* DOES ESTABLISH A "PER SE" RULE OF REVERSAL IN EVERY CASE, WHETHER THAT DECISION SHOULD BE OVERRULED?

Arguably, the underlying principles articulated in *Moseley* could be applied to the facts of this case and to *United States v. Miller,* 45 MJ 149 (CMA 1996), which we decide in tandem with this one, without having to revisit their application to the facts of *Moseley* itself. We see important distinctions among the three cases in connection with the presence of a defense counsel who was responsible for and available to function in the interest of the accused. Nonetheless, because it is clear to us that the various opinions in *Moseley* have caused some confusion, we will sharpen the contours of the relevant legal principles and explain how they apply to different scenarios.

### The Facts

The accused was tried on June 24, 1992. On August 20, his defense counsel submitted a clemency petition on his behalf to the convening authority under RCM 1105, Manual for Courts–Martial, United States (1995 ed.). On September 1, the military judge authenticated the record of trial, and defense counsel received a copy of it on September 3. *See* RCM 1104(a)(2)(A) and (b)(1)(C), and RCM 1106(f)(3). The SJA signed his recommendation on October 1, see RCM 1106(a), and on November 10, the convening authority took his action, noting that he had considered the SJA's recommendation and the clemency petition that had been submitted by defense counsel in August.

Meanwhile, sometime in September, defense counsel had left active duty for civilian life. The Court of Criminal Appeals concluded that there was no indication anywhere in the record that substitute defense counsel was appointed to pursue the accused's posttrial interests, *see United States v. Palenius,* 2 MJ 86 (CMA 1977), and RCM 1106(f)(2), and no indication, either, that the SJA's recommendation was served on any counsel representing the accused, as was required by RCM 1106(f)(1) and (2).

Thus, for purposes of its review, the Court of Criminal Appeals concluded that there was no such service, and for our purposes, we do likewise. We might add, as well, that there is no indication, either, that any counsel in any formal or informal capacity acted on the

accused's behalf by responding in any fashion to the SJA's recommendation, *see* RCM 1106(f)(4). In summary, then, once the accused's defense counsel left active duty in September, the accused was unrepresented in law and in fact until his case reached the Court of Criminal Appeals.

### The Law

Before a record of a general court-martial or of a special court-martial at which a bad-conduct discharge has been imposed is forwarded to the convening authority for action under RCM 1107, the SJA's recommendation to the convening authority must be served on defense counsel with opportunity to respond. *United States v. Goode,* 1 MJ 3 (CMA 1975); RCM 1106(f)(1) and (4). If there is no civilian defense counsel and if military defense counsel has "been relieved or [is] not reasonably available to represent the accused, substitute military counsel to represent the accused shall be detailed by an appropriate authority." RCM 1106(f)(2). In this fashion, the case law of this Court and the relevant Rules for Courts–Martial ensure that there is no gap in the representation of an accused between the end of trial and the onset of appellate review. *United States v. Palenius, supra.*

Unfortunately, because of apparent omissions of several persons—the detailed defense counsel, to ensure continuity of representation (*see generally United States v. Loving,* 41 MJ 213, 327 (1994) (Wiss, J., dissenting)(informing client of impending change in representation), *aff'd,* — U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996)); the supervisory defense counsel, to provide substitute defense counsel (RCM 1106(f)(2)); and the SJA, to serve his recommendation on defense counsel (an effort that likely would have revealed to him that there was no defense counsel to serve)—the accused was entirely unrepresented post-trial except for the clemency petition his counsel had filed in August. Without minimizing the potential importance of such a petition, we do not minimize, either, the importance of the opportunity to know the content of the SJA's recommendation and to respond to it. It was in recognition of this importance, as well

as of the crucial quality of the convening authority's action on an accused, that the *right* to legal representation at that stage was established. *Cf. United States v. Fluellen,* 40 MJ 96, 98 (CMA 1994); *United States v. Spurlin,* 33 MJ 443 (CMA 1991); *United States v. DeGrocco,* 23 MJ 146 (CMA 1987).

In *United States v. Moseley, supra,* this Court addressed a case in which defense counsel continued to represent his client after trial but, for some reason, was not served with the SJA's recommendation and, therefore, did not respond to it. Judge Wiss, with then-Chief Judge Sullivan concurring without opinion, expressly treated that effectively as "an *absence* of counsel functioning on behalf of an accused...." 35 MJ at 484. Given that view, those two Judges concluded that "the only way to make up for the *absence* of counsel at that stage is to re-do that stage with benefit of counsel acting in appellant's interests." *Id.* at 485.

Judges Crawford and Gierke were of a different mind. Although they did not expressly say so, it may be inferred from their separate opinions that they did not view that factual situation as one in which there was an *absence of counsel* for the accused. Rather, as Judge Crawford wrote, it more logically was one in which there was an "*absence of input*" on behalf of the accused by his defense counsel. 35 MJ at 486 (emphasis added). This omission in a particular case might result from a delict by counsel or from some procedural error. Regardless of the underlying cause, however, this view of the omission as being absence of input rather than absence of counsel led those two Judges to believe that they appropriately could and should test for prejudice to the accused from the lack of this input. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

Then-Judge Cox wrote a separate opinion concurring in Judge Wiss' opinion. In the first paragraph, Judge Cox seemed clearly to reject the test-for-prejudice approach of Judges Crawford and Gierke and to embrace the view of Judges Wiss and Sullivan. Subsequently, though, he suggested a procedural vehicle for resolving such errors: A motion in the Court of Criminal Appeals to correct

the error that would specify the relief sought and the reason for the relief; a ruling by that court on the merits of the motion; and review by this Court, in due course, on the correctness of the lower court's ruling. 35 MJ at 485; *see United States v. Smart,* 21 MJ 15, 18 (CMA 1985). Judge Cox commented that, in that last stage, this Court "could apply a harmless-error analysis to the issue because we would know that the question had been raised and resolved by the court below." 35 MJ at 485.

Judge Cox's opinion has been pivotal to the lower courts in applying *Moseley,* given the even division of the other four Judges. Unfortunately, that opinion has not been read consistently by the lower courts. We are advised by the parties here that some panels of the Navy–Marine Corps Court of Criminal Appeals, like the one that reviewed this case for instance, have read it to agree with Judges Wiss and Sullivan and, therefore, have not applied a test for prejudice. Other panels, however, apparently have read it to embrace a test for prejudice after the Court of Criminal Appeals in a particular case has ordered the defense to demonstrate what it would have written to the convening authority if it had been given the chance.

■ The critical legal principle that is applicable, with which no Judge in *Moseley* disagreed, may be stated as follows: If a defense counsel is absent for purposes of accepting service of the SJA's recommendation and responding thereto, the accused thereby has been deprived of his right to defense counsel at that important stage. As Judge Gierke wrote in his concurring opinion under analogous circumstances in *United States v. Leaver,* 36 MJ 133, 136 (CMA 1992):

> Because a court-martial sentence is inchoate until approved by the convening authority, the convening authority's action is an integral part of the sentence process. Denial of assistance of counsel during this critical phase of the sentencing process "is legally presumed to result in prejudice." *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 353, 102 L.Ed.2d 300 (1988), *quoting Strickland v. Washington,* 466 U.S. 668,

692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984).

*Cf. Austin v. United States,* 513 U.S. 5, 115 S.Ct. 380, 130 L.Ed.2d 219 (1994)(An indigent defendant pursuing an appeal as of right has a constitutional right to a brief filed by an attorney, but that right does not extend to discretionary appeals.); *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978)("[A]ssistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'"). Any disagreement among the Judges in *Moseley* may be seen to be in the context of applying this principle, rather than with the principle itself.

■ On the other hand, if counsel who has the legal responsibility to protect the accused's post-trial interests is present, it cannot be said that the accused has been deprived of his right to counsel. Instead, any error that occurs in connection with that counsel's performance of his duty of representation or from a procedural error affecting counsel's ability to meet this responsibility appropriately can be tested for prejudice. *United States v. Pierce,* 40 MJ 149 (CMA 1994); *United States v. Smart, United States v. Spurlin,* and *United States v. DeGrocco,* all *supra.*

### *Application of the Law to the Facts*

■ The facts of this case reasonably can lead only to the conclusion that the accused did not have a defense counsel present for purposes of accepting service of the SJA's recommendation and responding thereto. We recognize, as we mentioned earlier, that trial defense counsel did file a clemency petition on the accused's behalf with the convening authority. The accused's right to file such a petition under RCM 1105, however, is distinct from his right to respond to the SJA's recommendation under RCM 1106 and *United States v. Goode, supra.*

In any particular case, these two rights may be exercised simultaneously under the time-limit provisions of these rules. *Compare* RCM 1105(c)(1) *with* RCM 1106(f)(5). Nonetheless, the rights remain distinctly sep-

arate and need not be exercised simultaneously.

In this case, recall that defense counsel filed his clemency petition on August 20—2 weeks before counsel was served with the authenticated record of trial and 6 weeks before the SJA signed his recommendation. Under these circumstances, and considering the time-limit provisions just cited, there simply is no logical or lawful way to view the clemency petition here as fulfilling the accused's right to respond to the recommendation.

■ Accordingly, when defense counsel left active duty sometime in September without appointment of substitute counsel, and when the SJA failed to serve a defense counsel with his recommendation, the accused was deprived of his right to defense counsel at that important stage. Given the absolute, discretionary power of a convening authority to act favorably for an accused, the accused is entitled to have a new post-trial action that will be based upon an SJA's recommendation that the accused's defense counsel will consider and have an opportunity to respond to.

*Decision*

The decision of the United States Navy–Marine Corps Court of Criminal Appeals ordering a new action is affirmed.

Chief Judge COX and Judges SULLIVAN and GIERKE concur.

CRAWFORD, Judge (dissenting):

On June 24, 1992, pursuant to his pleas, the accused was convicted of conspiracy to commit forgery and larceny, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 USC §§ 881 and 921, respectively. Pursuant to a pretrial agreement to refer the case to a special court-martial rather than an investigation under Article 32, UCMJ, 10 USC § 832, the judge entered findings of not guilty to the following: (1) larceny (2 specifications); (2) forgery by making a false signature on a check; (3) forgery by uttering the same check; and (4) failure to pay a just debt, in violation of Articles 121, 123, and 134, UCMJ, 10 USC

§§ 921, 923, and 934, respectively. There was no limitation on the sentence at the special court-martial authorized to adjudge a bad-conduct discharge. The accused was sentenced to a bad-conduct discharge, 4 months' confinement, a $3,000 fine, and reduction to the lowest enlisted grade.

At trial, the accused requested that the staff judge advocate (SJA)'s recommendation be served on his defense counsel. On August 20, 1992, defense counsel submitted a clemency petition. On September 1, 1992, the record of trial was authenticated and delivered to the accused's defense counsel on September 3. Around the time of this delivery, defense counsel left active duty, and the SJA's recommendation was never served on any counsel representing the accused. On November 10, 1992, in approving the sentence, the convening authority stated he had considered the clemency petition from the accused's trial defense counsel.

On February 23, 1995, the accused submitted a 2–page *pro forma* brief before the court below. He did not reveal any additional information that he would furnish to the convening authority that would result in a different action in the case.

The Court of Criminal Appeals set aside the convening authority's action and required a new SJA recommendation and convening authority action. In requiring a new recommendation and action it stated: "We understand the concerns of the Government when we remand a case to correct an error in which no actual prejudice has been demonstrated and it appears unlikely that any can be shown." Unpub. op. at 5. The Judge Advocate General certified the following issues:

I

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS CORRECTLY INTERPRETED THIS COURT'S DECISION IN *UNITED STATES V. MOSELEY*, 35 MJ 481 (CMA 1992), AS REQUIRING A "PER SE" RULE OF REVERSAL WHERE THE STAFF JUDGE ADVOCATE'S RECOMMENDATION IS NOT SERVED ON TRIAL DE-

FENSE COUNSEL BUT WHERE CLEMENCY MATTERS WERE SUBMITTED ON BEHALF OF [THE ACCUSED] AND CONSIDERED BY THE CONVENING AUTHORITY.

## II

IF *MOSLEY* DOES ESTABLISH A "PER SE" RULE OF REVERSAL IN EVERY CASE, WHETHER THAT DECISION SHOULD BE OVERRULED.

These questions were presented to this Court and should be answered by the majority. As to Issue I, I would answer no. As to Issue II, I would answer yes.

This Court has been diligent in ensuring adequate post-trial representation. *United States v. MacCulloch,* 40 MJ 236 (CMA 1994)(defense counsel's failure to winnow out derogatory information in packet submitted to the convening authority required new recommendation and action); *United States v. Dresen,* 40 MJ 462 (CMA 1994)(defense counsel cannot ask for punitive discharge without consent of client); *United States v. Pierce,* 40 MJ 149 (CMA 1994)(unilateral decision by defense counsel not to submit information was error, but not prejudicial); *United States v. Leaver,* 36 MJ 133 (CMA 1992)(ordered new action when recommendation served on conflicted counsel).

However, this Court has not applied a *per se* reversal rule. *Cf. United States v. Moseley, supra.* In *United States v. Pena,* 22 MJ 281, 283 (1986), this Court noted that even though there was no proof that the defense counsel was served with the SJA recommendation, it found no prejudicial error because there was no deficiency in the recommendation. *See United States v. Smart,* 21 MJ 15 (CMA 1985)(no prejudice suffered by the accused).

In *United States v. Robertson,* 39 MJ 211, 218 (1994), this Court emphasized the duty of counsel to submit matters that establish prejudice based on the presumption of competence. If nothing is submitted, the Court will not order a new recommendation and action.

While it might be possible to distinguish *United States v. Moseley, supra,* that decision should be reexamined because it failed to consider earlier cases from this Court. In *United States v. Smart, supra,* Chief Judge Everett indicated that when a "review is not served on the defense counsel until after action ... and the defense counsel learns of its existence and contents in some indirect way, the proper procedure is for the defense counsel promptly to identify defects in the review and then request that the Court of Military Review remand the case to the convening authority for further review." 21 MJ at 18. When that is not done though, the Court in *Smart* stated:

> With respect to the present case, we agree fully with these comments of the Court of Military Review:
>
> > Instead of promptly complaining that he had not received a copy of the review, the defense counsel did nothing. If a defense counsel chooses to sit idle, he does so at his peril. *United States v. Kincheloe,* 14 MJ 40, 43 (CMA 1982). We also note that appellant's trial defense counsel nowhere states that he would respond to the review if allowed time to do so. There is no suggestion of any particular deficiency in the review or prejudice suffered by appellant.
>
> > The purpose of service is to provide appellant the opportunity to explain or rebut any adverse matters contained within the post-trial review. However, the service requirement is not an invitation for counsel to do nothing. Under these circumstances, the lengthy delay waives any objection to the defect in service of the review.

21 MJ at 18.

There are various scenarios that we have reviewed in the past:

*Scenario 1.* Counsel not served and no submission. *Pena,* 22 MJ at 283 (no prejudice); *Smart,* 21 MJ at 18 (no prejudice); *Kincheloe,* 14 MJ at 44 (no prejudice).

*Scenario 2.* Counsel served but no submission. *United States v. Pierce,* 40 MJ 149

(CMA 1994)(unilateral decision by defense counsel not to submit information was error, but not prejudicial); *United States v. Robertson*, 39 MJ 211, 218 (CMA 1994) ("the accused has the burden of showing that his counsel was deficient and that the deficiency prejudiced him").

*Scenario 3.* Counsel not served but submitted clemency package before leaving active duty. This case.

*Scenario 4.* Counsel leaves active duty and nothing submitted. *Cf. United States v. Robertson, supra.*

*Scenario 5.* Substitute counsel appointed but no contact with defendant. *United States v. Miller,* 45 MJ 149 (1996).

*Scenario 6.* Service on conflicted counsel. *United States v. Cornelious,* 41 MJ 397, 398 (1995)(new recommendation and action ordered because not clear whether defense counsel was "mentally free of competing interests" and had resolved a potential conflict raised by the accused); *United States v. Carter,* 40 MJ 102, 106 (CMA 1994)(new recommendation and action not required because defense counsel not aware of the accused's allegation of ineffectiveness—*United States v. Leaver,* 36 MJ 133 (CMA 1992), distinguished because Leaver sought replacement for discharged counsel).

Arguably, as to Scenarios 3 and 6, we should presume prejudice when there is no counsel or service on a conflicted counsel. Even then, a *per se* reversal rule should not be applied, but the Courts of Criminal Appeals should test for prejudice.

Supreme Court case law does not support a presumption of prejudice even when there is an allegation of an actual conflict of interest. *See, e.g., Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). The burden should be on the person who makes the allegation of error and knows what evidence might be submitted. That evidence should be submitted to the appropriate authority to determine whether the accused was prejudiced by improper service or no service.

In this case, the accused agreed to plead guilty to 1/3 of the offenses and avoid an Article 32, UCMJ, 10 USC § 832, investigation in exchange for referral to a special court-martial, thereby limiting the maximum punishment. Since the court below did not test for prejudice under Article 59(a), UCMJ, 10 USC § 859(a), this case should be returned to that court to determine whether, in light of the charges, the pretrial agreement, the clemency package, and the other circumstances, the accused was prejudiced because a substitute counsel was not appointed for the receipt of the SJA's recommendation.