UNITED STATES, Appellant

v.

Nathaniel WASHINGTON, Electrician's
Mate Second Class, U.S. Navy,
Appellee.

No. 96–5005.
Crim.App. No. 95–0511.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 7, 1996.

Decided Feb. 7, 1997.

For the Accused: *Lieutenant Leslie K. Burnett,* JAGC, USNR (argued).

For the United States: *Major Stephen P. Finn,* USMC (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USNR (on brief).

*Opinion of the Court*

GIERKE, Judge:

Electrician's Mate Second Class (EM2) Washington was convicted by a general court-martial, pursuant to his pleas, of wrongfully using methamphetamine, wrongfully introducing methamphetamine onto a vessel, and wrongfully distributing methamphetamine (18 specifications), in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The court-martial, composed of officer members sitting at Naval Base, Treasure Island, San Francisco, California, sentenced EM2 Washington to a dishonorable discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence. In an unpublished opinion, the Court of Criminal Appeals set

aside the convening authority's action and returned the record to the Judge Advocate General for a new staff judge advocate (SJA)'s recommendation and convening authority's action. Thereafter, the Judge Advocate General certified the following issue:

> WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN IT FAILED TO TEST FOR PREJUDICE WHERE THE STAFF JUDGE ADVOCATE'S RECOMMENDATION WAS SERVED ON CIVILIAN DEFENSE COUNSEL RATHER THAN MILITARY DEFENSE COUNSEL, AS [EM2 WASHINGTON] REQUESTED.

We answer the certified question in the negative.

Because EM2 Washington was represented by both individual civilian counsel and detailed military counsel, the military judge inquired whether the record of trial and SJA's post-trial recommendation should be served on Washington himself, individual civilian counsel, or detailed military counsel. EM2 Washington orally requested, and later requested in writing, that both the record of trial and the post-trial recommendation be served on detailed military counsel.

Notwithstanding EM2 Washington's oral and written requests, the SJA served the post-trial recommendation on individual civilian counsel but not on detailed military counsel. Thereafter, the convening authority took action without having received any clemency matters from EM2 Washington or either of his counsel.

EM2 Washington asserted before the Court of Criminal Appeals that, if he had been given the opportunity, he would have submitted two matters for consideration by the convening authority. First, he would have pointed out that the SJA's post-trial recommendation erroneously indicates findings of guilty to 2 specifications of wrongful distribution of methamphetamine that were withdrawn pursuant to a pretrial agreement. Second, he would have submitted a letter from his fiancee.

The letter from EM2 Washington's fiancee is a 2–page, handwritten plea for clemency. She recites her dependence on EM2 Washington for financial support, asks for forgiveness on his behalf, recognizes that EM2 Washington must pay for his crimes, asks that their 1–month–old daughter not be punished for her father's mistakes, expresses her fear that she and the baby will be evicted from their apartment, and concludes by asking, "Please consider my plea. This is all I have left."

EM2 Washington was facing a maximum of 355 years' confinement. He pleaded guilty pursuant to a pretrial agreement limiting confinement to 4 years. Of the 18 illegal distributions of methamphetamine to which he pleaded guilty, 11 involved distributions to other sailors on board the USS ABRAHAM LINCOLN, an aircraft carrier of the United States Navy. The court-martial sentenced him to confinement for 3 years, less than that provided for in the pretrial agreement.

The Court of Criminal Appeals took note of "the extreme seriousness of these drug offenses and the relatively lenient sentence adjudged by the members when compared to the maximum permissible punishment...." Unpub. op. at 3. Nevertheless, the court below, with one judge dissenting, stated, "[W]e have no basis to conclude that the clemency petition from [EM2 Washington's] fiancee would have had no effect on the convening authority's action in this case." *Id.*

In *United States v. Leaver*, 36 MJ 133 (1992), this Court held that "denial of assistance of counsel during this critical phase of the sentencing process is legally presumed to result in prejudice." When an accused does have counsel, however, but that counsel's ability to perform is adversely affected by a procedural error, we may test the procedural error for prejudice. *United States v. Hickok*, 45 MJ 142, 145 (1996). If, however, the procedural error effectively results in a deprivation of counsel, our consideration of harmlessness "is limited to whether subsequently afforded counsel was able to make up for the earlier deprivation." *United States v. Moseley*, 35 MJ 481, 484 (CMA 1992); *but see Moseley, supra* at 486 (Gierke, J., concurring in part and dissenting in part).

■ EM2 Washington was not "effectively" deprived of counsel. EM2 Washington had both civilian and military counsel during the post-trial proceedings. Even though he requested that only his military counsel be served with the record of trial and the SJA's post-trial recommendation, there is nothing in the record showing that civilian counsel's representation was terminated by competent authority. Thus, both civilian and military counsel had a duty to actively represent EM2 Washington during the post-trial proceedings. *See United States v. Palenius,* 2 MJ 86, 93 (CMA 1977).

The problem here arose when the wrong counsel was served with the post-trial recommendation. There is no allegation of ineffective assistance of counsel before us, and we will not speculate about the reasons for the apparent failure of military and civilian counsel to communicate in this case. There was no denial of counsel in this case, but because there was a procedural error in serving the wrong counsel, the error must be tested for prejudice. In this respect, we agree with the underlying legal premise of the certified issue: that the error in this case must be tested for prejudice.

We disagree, however, with the underlying factual premise of the certified issue: that the court below applied a *per se* rule and did not test for prejudice. The court below weighed the seriousness of the offenses and the entire record against the matters that would have been submitted if there had been no procedural error. Only thereafter did it find prejudice.

The only remaining question is whether the court below erred as a matter of law in finding that the procedural error was prejudicial. This Court has consistently recognized the broad clemency powers of the convening authority and has given the accused the benefit of the doubt rather than speculate about what the convening authority might have done absent a procedural error. *See United States v. Jones,* 44 MJ 242, 244 (1996); *United States v. Craig,* 28 MJ 321, 325 (CMA 1989); *United States v. Hill,* 27 MJ 293, 296–97 (CMA 1988); *United States v. Siders,* 15 MJ 272, 274 (CMA 1983); *see also Moseley,* 35 MJ at 487 (Gierke, J., concurring in part and dissenting in part).

■ In EM2 Washington's case, the Court of Criminal Appeals gave him the benefit of the doubt. We cannot say that the court below erred as a matter of law in its assessment of prejudice. The decision of the United States Navy–Marine Corps Court of Criminal Appeals ordering a new recommendation and action is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and EFFRON concur.