# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS

———————————

**No. 201600320**

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## MICHAEL P. BARATTA
Captain (O-6), U.S. Navy
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Charles N. Purnell, JAGC, USN.
Convening Authority: Commandant, Naval District Washington, Washington Navy Yard, DC.
For Appellant: Captain Daniel R. Douglass, USMC.
For Appellee: Major David N. Roberts, USMCR; Lieutenant Jetti L. Gibson, JAGC, USN.

———————————

Decided 15 March 2018

———————————

Before MARKS, JONES, AND WOODARD, *Appellate Military Judges*

———————————

## PUBLISHED OPINION OF THE COURT

———————————

MARKS, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of two specifications of indecent acts committed prior to 28 June 2012, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2008), and four specifications of indecent viewing, visual recording, or broadcasting committed after 28 June 2012, in violation of Article 120c, UCMJ, 10 U.S.C. § 920c (2012). A panel of officers sentenced the appellant to three years' confinement and a dismissal from the service. The convening authority (CA) approved the sentence as

adjudged but, pursuant to a pretrial agreement, suspended all confinement in excess of 24 months.

The appellant asserts two assignments of error: (1) his sentence is inappropriately severe; and (2) the Defense Incident-Based Reporting System (DIBRS) codes recorded on the appellant's Report of Results of Trial do not accurately reflect his convictions.

We disagree. After carefully considering the record of trial and submissions of the parties, we are convinced that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant has occurred. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

For nearly four years, the appellant video recorded unsuspecting individuals in the locker room at a naval installation gym and at his home. In the locker room, the appellant hid a small camera in the heel of his running shoe and manually recorded colleagues showering. In his home, he planted motion-activated cameras disguised as clocks in a bathroom and bedroom to surreptitiously record house guests undressing and showering. At the appellant's invitation, two men lived in his home as guests for months at a time. One was a fellow naval officer who had transferred to the appellant's base ahead of his family and was actively looking for a house in the appellant's neighborhood. The other was a civilian employee, N.P., whom the appellant befriended and invited into his home following N.P.'s divorce. In addition to capturing N.P. while he showered at the base gym, the appellant regularly recorded N.P.'s most personal moments in the master bedroom and bathroom of his home over a two-year period. When N.P.'s parents visited him at the appellant's home, the appellant's hidden cameras captured them undressing as well. Only after something strange about the bathroom clock caught N.P.'s attention did he discover the implanted camera. N.P. reported his discovery to local police. When the police searched the appellant's home computer, they found nearly four years' worth of video recordings saved and categorized.

## II. DISCUSSION

### A. Sentence severity

The appellant argues that a sentence of three years' confinement and a dismissal is inappropriately severe considering his extensive and successful career.

We review sentence appropriateness *de novo. See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires our "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1988) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)). When giving individualized consideration, we may consider the entire record of trial. *See Healy*, 26 M.J. at 396. Notwithstanding our significant discretion to determine sentence appropriateness, we may not engage in acts of clemency, which is the prerogative of the convening authority. *See United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In the case before us, we have considered the appellant's substantial evidence in extenuation and mitigation. The appellant pleaded guilty and repeatedly expressed deep remorse for the pain he caused his victims. Three admirals testified to the appellant's military character, which had propelled him to command at sea, the rank of captain, and significant positions of special trust and confidence in his 27-year career. The appellant was on track to be selected as a Flag officer. Two of the appellant's siblings testified to his extraordinary generosity and devotion to their close-knit extended family and his special relationship with their children. The appellant's therapist expressed confidence in his prospects for rehabilitation. A forensic psychologist testified that the appellant had a low risk of recidivism. Finally, even one of the appellant's victims took the stand on his behalf.

But the appellant's sterling career and family life must be weighed against four years of calculated misconduct. In a locker room on a military installation, the appellant, a senior officer, violated the privacy of unsuspecting men who reasonably assumed no one would record them undressing and showering. The appellant's deception and betrayal were even greater in his own home. He extended hospitality to colleagues who trusted his offer of the comfort and privacy of a temporary home. By planting hidden cameras in a bedroom and bathroom, carefully positioning them to capture guests in bed, using the toilet, or exiting the shower, regularly downloading the recorded video to his computer, and methodically sorting and storing the files, the appellant evidenced a sustained intent to invade the privacy of trusting house guests for his own sexual gratification. The voyeurism lasted for four years and ended only when the appellant was caught.

Testimony and email correspondence show how carefully the appellant had cultivated his friendship with N.P. through gifts and insistence that N.P. make himself comfortable in the appellant's home. The appellant and N.P. both referred to each other as best friends. N.P.'s unsworn statement in

presentencing conveyed the devastation he experienced from betrayal by such a close, trusted friend and the lingering paranoia he suffers.

After considering the entire record, including the offense and the offender's career and character, we are convinced the sentence is appropriate and decline to grant relief.

**B. Correct court-martial records**

The appellant asserts that his Report of Results of Trial contains DIBRS codes that do not accurately reflect his convictions.

### 1. *DIBRS and NIBRS crime reporting systems*

In accordance with the Uniform Federal Crime Reporting Act of 1988, "[a]ll departments and agencies within the Federal government (including the Department of Defense) which routinely investigate complaints of criminal activity, shall report details about crime within their respective jurisdiction to the Attorney General" via the Federal Bureau of Investigation (FBI). 34 U.S.C. § 41303(c)(2), (d). To comply with this statutory criminal incident reporting obligation, the Department of Defense (DoD) created DIBRS.[1] "DIBRS is DoD's centralized reporting system to the [FBI]'s National Incident-Based Reporting System (NIBRS)[.]"[2] Using NIBRS, the FBI "assembles, publishes, and distributes" crime data from county, state, and federal law enforcement agencies, including the DoD.[3]

Within the DoD, DIBRS is a repository for data regarding a wide range of reportable criminal incidents.[4] Following adjudication of a criminal offense at court-martial, judge advocates are responsible for initiating a report of the results of that court-martial.[5] The Report of Results of Trial has been standardized within the DoD in DD Form 2701-1. Among the data fields collected on DD Form 2701-1 is the "DIBRS Code" for each offense for which the accused was charged at court-martial. DIBRS codes are catalogued in Department of Defense Manual (DoDM) 7730.47-M, Volume 2, which is entitled "Defense Incident-Based Reporting System (DIBRS): Supporting Codes" and issued by the Under Secretary of Defense for Personnel and Readiness. Every offense in violation of the UCMJ has been assigned a code,

---

[1] Department of Defense Instruction (DoDI) 7730.47 at ¶ 1.c. (Jan. 23, 2014).

[2] *Id.* at ¶ 3.b.

[3] Department of Defense Manual (DoDM) 7730.47-M, Vol. 1, Enclosure 3 at ¶ 1.b.(2) (Dec. 7, 2010).

[4] *Id.*, Enclosure 3 at ¶¶ 1.a, 2.a.

[5] *Id.*, Enclosure 3 at ¶ 2.d(4). *See also* RULE FOR COURTS-MARTIAL 1101(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.).

and a corresponding NIBRS code has been identified.[6] Neither the UCMJ nor the Manual for Courts-Martial addresses, or even refers to, DIBRS or NIBRS.

### 2. *Report of results of the appellant's trial*

The appellant pleaded guilty to violations of Article 120(k), UCMJ, Indecent Act, for offenses occurring before 28 June 2012, and Article 120c(a), UCMJ, Other Sexual Misconduct—Indecent Viewing, Visual Recording, or Broadcasting, for offenses occurring after 28 June 2012.[7] His Report of Results of Trial, completed by trial counsel immediately after his sentencing, reflects the correct UCMJ articles—120 and 120c—and the correct offense descriptions—"Indecent Act" and "Indecent Visual Recording."[8]

Trial counsel entered DIBRS codes 120-K1 and 120CC1 for Indecent Acts and Indecent Visual Recording, respectively. According to DoDM 7730.47-M, Volume 2, the DIBRS code for an "Indecent act on or after October 1, 2007 but before June 28, 2012" is 120-K1.[9] The DIBRS code for "Other sexual misconduct indecent viewing, visual recording, or broadcasting on or after June 28, 2012" is 120CC1.[10] The corresponding NIBRS code for both offenses is 11D, but it does not appear on the Report of Results of Trial or elsewhere in the record.[11]

The appellant claims that his Report of Results of Trial mispresents his offenses, and NIBRS Code 11D, in particular, is the source of prejudicial harm. "The NIBRS defines '11D' as '[t]he touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity.'"[12] Via Motion to Cite Supplemental Authority to this court, granted 29 January 2018, the appellant presented evidence of his Virginia State Police Sex Offender Conviction Record.[13] The Virginia record reports the appellant's conviction of three counts of "rape" of an adult

---

[6] DoDM 7730.47-M, Vol. 2, Appendix to Enclosure 2, Table 7 (Ch-2, Apr. 6, 2017).

[7] Charge Sheet, Record at 27.

[8] Report of Results of Trial of 17 Jun 2016.

[9] DoDM 7730.47-M, Vol. 2, Appendix to Enclosure 2, Table 7 at 19.

[10] *Id.* at 22.

[11] *Id.* at 19, 22.

[12] Appellant's Brief of 21 Feb 2017 at 9-10 (quoting NATIONAL INCIDENT-BASED REPORTING SYSTEM USER MANUAL at 40 (17 Jan 2013)).

[13] Motion to Cite Supplemental Authority of 26 Jan 2018, Appendix.

and five convictions of "indecent viewing, visual recording or broadcasting[.]"[14] The code section cited is "UCMJ Art. 120."[15]

The appellant argues that this record is "demonstrable evidence as to why post-trial documents must correctly reflect the results of an appellant's trial proceedings. The coding on [the appellant's] post-trial document is incorrect and causes harm and prejudice."[16] The appellant invokes *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998) as our authority to correct court-martial records.[17] According to *Crumpley*, an "[a]ppellant is entitled to have [his or] her official records correctly reflect the results of [a] proceeding." *Id.*

### 3. Authority to correct DIBRS codes in court-martial results

Our authority to correct any error, including an error in official records, is limited to our statutory jurisdiction.[18] In a court-martial such as the one before us, referred under Article 66, UCMJ, we are authorized to "act only with respect to the findings and sentence as approved by the [CA]." Art. 66(c), UCMJ. *See also United States v. Denedo*, 556 U.S. 904, 914 (2009). Consequently, when it comes to ensuring "official records correctly reflect the results of a proceeding[,]"[19] we may "act only with respect to the findings and sentence as approved by the [CA]." Art. 66, UCMJ. *See also United States v. Moseley*, 35 M.J. 481, 485 (C.M.A. 1992) (Cox, J., concurring) (noting that military courts of criminal appeals may correct "*de minimis*" errors in the CA's post-trial documents by "exercising their extraordinary powers found in Article 66, [UCMJ]").

RULE FOR COURTS-MARTIAL (R.C.M.) 918, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) defines findings. "The general findings of a court-martial state whether the accused is guilty of each offense charged." R.C.M. 918(a). Findings may reflect exceptions and substitutions to the language of a specification, a guilty finding to a lesser included offense, or in the case of special findings, findings of fact. R.C.M. 918(a)-(b). But R.C.M. 918 is silent as to DIBRS and NIBRS codes. R.C.M. 918. Additionally, entry of DIBRS or

---

[14] *Id.*

[15] *Id.*

[16] Motion to Cite Supplemental Authority at 2.

[17] *Id.*; Appellant's Brief at 10.

[18] Article I courts "must exercise their jurisdiction in strict compliance with authorizing statutes." *Ctr. For Constitutional Rights v. United States*, 72 M.J. 126, 128 (C.A.A.F. 2013). The authorizing statute for military courts of criminal appeals, like this one, is Article 66(c), UCMJ. *Id.*

[19] *Crumpley*, 49 M.J. at 539.

NIBRS codes is not an authorized punishment or part of a court-martial sentence. R.C.M. 1003. The CA's Action, memorialized in writing, is the CA's "decision as to the sentence, whether any findings of guilty are disapproved, and orders as to further disposition." R.C.M. 1107(f)(1). A CA does not approve DIBRS or NIBRS codes.

The Report of Results of Trial in this case accurately reflects the findings and sentence. DIBRS and NIBRS codes are reporting mechanisms outside the UCMJ and Manual for Courts-Martial. They are neither findings nor parts of a sentence, thus we do not have the authority to act upon them. Art. 66(c), UCMJ.

### III. CONCLUSION

The findings and sentence as approved by the CA are affirmed.

Judge JONES and Judge WOODARD concur.

For the Court

R.H. TROIDL
Clerk of Court